## COLLINS & DOUGLAS V. L. W. COOPER.

(Case No. 2155)

1. AGENCY—INCIDENTAL POWERS OF AGENT—Every agency carries with it or includes in it, as an incident, all the powers that are necessary, proper or usual as means

to effectuate the purpose for which it was created, unless the inference of such powers is expressly excluded by the instrument creating the agency or by the circumstances of the business to which the agency relates.

2. SAME—WHEN EXISTENCE OF INCIDENTAL POWERS A QUESTION FOR THE JURY—Incidental powers may be held, in a given case, to exist by inference or intendment of law; in another, their existence may be a mere inference of fact arising from the circumstances of the particular case. In the latter, the question of their existence is one for the jury to determine, and this court will not, in such a case, disturb their verdict where there was a conflict in the evidence, unless there was some error in the charge of the court, submitting to them the question of authority.

3. SAME—IMPLIED POWERS OF AGENT—WHAT NECESSARY TO CONSIDER IN DETERMINING— In order to ascertain the powers which are to be implied from the direct or principal authority conferred verbally and in very general terms on an agent, to whom, as sole manager, had been entrusted the conduct of a large mercantile business, it is not only proper, but also necessary, to consider the character of the business, the manner in which it is usual to carry on such a business, and, where the agency has continued for a long time, the manner in which the particular business was conducted.

4. PRINCIPAL AND AGENT—ASSUMED AUTHORITY—NOTICE—INNOCENT THIRD PERSONS— ESTOPPEL—A principal who does not use the means within his reach, which, for his own protection, prudence would suggest, to ascertain how his agent clothed with general powers in a particular business, conducts that business, when the use of such means would lead to knowledge that the agent is holding himself out as the possessor of authority to do acts which the principal never intended he should do, should not be heard to deny notice of the authority which the agent has assumed to exercise, or to deny the existence of such authority, when to do so would operate to the injury of a person who, on the faith of an open and long continued exercise of such apparent power, has dealt with the agent in the belief of its real existence.

5. SAME—If one, with notice that his agent assumes to have and to exercise a power he really does not possess, as agent, permits the agent to hold himself out as clothed with such power, then the principal will be as fully bound by the acts of the agent as though the latter possessed the power, in so far as third persons who rely upon the apparent authority are concerned.

6. SAME—IMPLIED POWER OF AGENT TO BORROW MONEY—WHEN NOT A QUESTION OF LAW—See this case held to be one in which the power of an agent to borrow money may exist by implication; and for facts and circumstances held to be such that it cannot be determined, as matter of law, that such a power was not within the scope of the general powers of the agent.

7. SAME—NOTICE—ESTOPPEL—See opinion in this case for facts and circumstances held to estop the principal to deny notice of the unauthorized acts of the agent.

8. SAME—RATIFICATION—See opinion in this case for facts held to amount to a subsequent ratification by the principal of the agent's unauthorized acts.

APPEAL from Houston. Tried below before the Hon. F. A. Williams.

This was a suit on a promissory note for $800, executed to the appellee, L. W. Cooper, by James Collins, in the name of Collins & Douglas, a firm composed of E. M. Collins and M. C. Douglas, for

money borrowed and used by him in a mercantile business, which he, as sole manager, was at the time conducting for that firm.

The defendants answered, denying, under oath, the authority of James Collins to execute the note in question, and also his authority to borrow money in their name. There was a trial by jury, resulting in a verdict and judgment in favor of the plaintiff, Cooper, for the amount of the debt and costs. Defendants appealed.

The paragraphs of the court's charge to the jury, assigned as error, were as follows:

"If you find that Collins was an agent of defendants, but that express authority was not given to him, as such agent, to borrow money for defendants, then you may look to the contract between them as it may be shown, by the evidence, the nature and character of the business in which Collins was employed to act as agent, and all the transactions between them, and ascertain whether or not it is to be fairly implied as contemplated by them or embraced in the scope of his employment as agreed on between them, that he should have such powers to borrow money to be used in such business."

" If defendant (meaning Collins) borrowed money from plaintiff for the benefit of defendants, without authority from defendants, either express or implied, and if defendants, knowing that such money had been borrowed, ratified and acquiesced in the act of Collins, or knowing such money to be borrowed, accepted the benefit of it, then they would be held bound by the act of Collins, as much as if they had authorized it before it was done."

"If you should find that Collins borrowed money from plaintiff, claiming to act as agent of defendants, and if such act of borrowing was within the usual and ordinary scope or purview of the business in which Collins was employed, and which he was authorized by defendants to conduct and carry on, and plaintiff loaned the money to Collins for the benefit of defendants, then defendants would be bound for such money, even if, by the private contract between defendants and Collins, he was not authorized to borrow money, unless plaintiff knew he was not so authorized when he loaned the money."

The special instruction asked by the plaintiff and granted by the court, the granting of which was assigned as error, was as follows:

" It is not necessary for plaintiff to show any express authority in James Collins to borrow money to render defendants liable. If money was borrowed by Collins in the general course and conduct of the business, and defendants knew this fact and acquiesced in it, and the note sued on was given for money borrowed of plaintiff, by Col-

lins, for the business, and the money was in good faith used in the business, and plaintiff had no knowledge of any want of express authority on Collins' part to borrow money, then you will find for plaintiff."

The special instruction asked by the defendants and refused by the court, the refusal of which was assigned as error, was as follows:

"The jury are instructed, that the defendants in the case are bound by the acts of their agent, James Collins, only in respect to such acts as come *within* the scope of his authority; that if the evidence shows James Collins to be the agent of defendants to conduct and carry on a mercantile business in the town of Crockett, being placed in the possession of a stock of goods and assets with which to conduct such business, and without express authority from the defendants, the agent would not be authorized to borrow money and execute the note in the name of the defendants, even though the same was used in such business."

From the foregoing statement, and the opinion of the court, the case will be understood.

*Nunn & Aldrich*, for appellants, on questions discussed in the opinion, cited: Latham v. Pledger, 11 Tex. 439; Reese v. Medlock, 27 Tex. 120; McCormick v. Bush, 38 Tex. 320; Com. Bank v. Jones, 18 Tex. 811; McAlpin v. Cassidy, 17 Tex. 449; Harrington v. Moore, 21 Tex. 546; Smith's Merc. Law, pp. 170, 172, 175, 177; 1 Parson on Cont., p. 58, note *e;* Id., p. 40, note *a;* Hawtayin v. Bourne, 7 M. & W. 595; 1 Parson on Cont., p. 43, note *e;* Story on Agency, secs. 21, 22. 62, 62, 63, 64, 65, 66, 67, 68, 69, and note 4; 1 Wait's Acts. and Def., 222, 226, 230, 233, 240; Abbott's Trial Ev., pp. 241, 242; Hancock v. Horan, 15 Tex. 507; Chandler v. Van Roeder, 24 How. 244; Austin v. Talk, 20 Tex. 164; Wintz v. Morrison, 17 Tex. 372; Thompson v. Shannon, 9 Tex. 537; McGreal v. Wilson, 9 Tex. 4 29; Wheeler v. Moody, 9 Tex. 372; Love v. Wyatt, 19 Tex. 312; Smithwick v. Andrews, 24 Tex. 494; Garrett v. Chambliss, 24 Tex. 619; Pierce v. Randolph, 12 Tex. 290; Green v. Hill, 4 Tex. 465; Story on Agency, secs. 21, 22, 62, 69, note 4; Bronson v. Chappell, 12 Wall. 683; Schimmelpennich v. Bayard, 1 Peters 264; 1. Parson on Cont., p. 62; Rossiter v. Rossiter, 8 Wend. 494; Commercial Bank v. Jones, 18 Tex. 811; Vincent v. Rather, 31 Tex. 77; Owings v. Hull, 9 Peters, 629; Bronson v. Chappell, 12 Wall. 683; Smith v. Sublett, 28 Tex. 163; Blane v. Proudfit, 3 Cal. 207; Owings v. Hull, 9 Peters. 607.

*Denson & Burnett*, for appellees, on questions discussed in the opin-

ion, cited: Raymond v. Mann, 45 Tex. 301; H. & T. C. R'y Co. v. Chandler, 51 Tex. 420, 421; Henderson v. R'y Co., 17 Tex. 560; Abbott's Trial Ev. 242; 2 Greenl. Ev., secs. 61, 65-67; Story on Agency, secs. 87, 95, 96; 1 Wait's Act. and Def. 286, 287; Martin v. Webb, 110 U. S. 14, 15; Merchants' Bank v. State Bank, 10 Wall. 644; Mining Co. v. National Bank, 96 U. S. 640; Turner v. Keller, 66 N. Y. 66; Dollfus v. Frosch, 1 Denio, 368; Merriman v. Fulton, 29 Tex. 105, 106.

STAYTON, ASSOCIATE JUSTICE.—The agency conferred on James Collins in 1869, and continued until near the close of the year 1884, through which he conducted, as sole manager, a large mercantile business for the appellants, was given verbally and was of the most general character. The determination of the extent of authority conferred on an agent under such circumstances, and in such a manner, often becomes difficult; and in such a case it is not only proper, but becomes necessary, to consider the character of the business, the manner in which it is usual to carry on such a business, and, where the agency has continued for a long time, the manner in which the particular business was carried on, in order to ascertain the powers which are to be implied from the direct or principal authority.

Every agency "carries with it, or includes in it, as an incident, all the powers which are necessary or proper, or usual, as means to effectuate the purpose for which it was created," unless the inference of such powers be expressly excluded by the instrument creating the agency, or by the circumstances of the business to which the agency relates. Incidental powers may be held, in a given case, to exist by inference or intendment of law. Their existence in another case may be a mere inference of fact arising from the circumstances of the case, and in such a case the question is one for a jury to determine. There is hardly a conflict in the evidence as to the language used in conferring the agency on James Collins,-nor in reference to the manner in which the business was conducted, but the witnesses vary very materially in their opinions as to the powers conferred. If, however, there was a conflict in the evidence, it would rest with the jury to settle it, and, unless there was some error in the charge of the court submitting the question of authority to the jury, we could not disturb their verdict.

James Collins testified that: "The terms of the contract were very general in their character, and the contract was verbal. She told me to manage the business as I thought best—nothing was said about borrowing money. I was to manage the business as I deemed best for their interest. I thought it necessary to borrow the money. We have to do a large credit business in this section and advance to the

farmers, and business cannot be carried on without it." Mrs. Collins denied the authority of the agent to borrow money, and stated that "there was no contract made with James Collins as to the manner of his carrying on the business. I placed such confidence in his integrity and business capacity that it never occurred to me to suspect that the business was being badly managed until it was too late. He did business for us since July, 1869, until December, 1884."

Mrs. Douglas, denied the authority of the agent to borrow money, and stated that "the arrangement with James Collins, as agent, was made by Mrs. E. M. Collins, and I do not know of any authority or power having been delegated to or conferred upon him in regard to the management of the business, except to buy and sell merchandise, collect debts due the firm and settle the debts of the firm. The contract made with James Collins, our agent, was verbal; do not remember the exact language used in making the contract. We employed him as our agent to take charge of the business for the purpose of buying and selling merchandise, collecting debts due the firm, paying debts due by the firm, and everything that would come within the scope of doing a general mercantile business."

The evidence shows that for a long series of years the agent had borrowed large sums of money from persons resident of the county, some of whom were acting in fiduciary capacities, and that for the sums so borrowed he executed notes in the names of his principals. These notes were regularly entered upon the books of the firm as bills payable, the entries giving the names of the creditors, sums due, when due, and rates of interest, but not stating that the notes were given for borrowed money. The husband of one of the defendants was employed in the store for several years ; was book-keeper for one year, and knew that borrowed money was used in the business. The entire business was conducted openly and without the least concealment.

Under this state of facts, we cannot say that there was not evidence from which the jury might have found that the agent had an implied authority to borrow money. He was directed to manage the business as he deemed best. He deemed it necessary to borrow money ; and the inference from his evidence is that it was necessary to do so to make advances to farmers, without which the business could not have been carried on. We cannot say, as a matter of law, that the borrowing of money, for the purpose of such a mercantile business, was not within the scope of the general powers conferred on the agent. The appellants deny that they had knowledge that their agent was bor-

rowing money and using it in the conduct of their business until within a short time before his agency ceased.

They testified with all candor, and there is but little, if any, evidence to their discredit upon their statements of want of actual knowledge of such facts; but it may well be questioned whether, under all the facts in evidence, the law does not affect them with notice of what clearly appeared upon their own books. They were residents of the vicinity in which the business was conducted, frequently in the house, at all times entitled to inspect the books, the husband of one of them knew the fact that borrowed money was used in the business; the lenders, whose names appeared on the books as creditors, secured by notes bearing interest, were residents of the county, and were persons who were buyers of goods from the house, and not shown to have ever been merchants or sellers of goods, from which an inference might be drawn that the notes were executed for goods purchased in the usual course of trade.

Under such circumstances, it seems to us that a principal who does not use the means within his reach, which, for his own protection, prudence would suggest, to ascertain how an agent, clothed with so general a power in a given business, as was James Collins, conducts it, when the use of such means would lead to knowledge that the agent is holding himself out as the possessor of authority to do acts which the principal never intended he should do, ought not to be heard to deny notice of the authority which the agent has assumed to exercise, or to deny the existence of such authority, when, to do so, will operate to the injury of a person who, on the faith of the open and long continued exercise of such apparent power, has dealt with the agent on the faith of its real existence.

There was one instance in which it was shown that the appellants had actual notice that the agent had borrowed money for them, and it does not appear that they repudiated his act. This would tend, of itself, to show not only that they had some notice of his course of dealing, but also to show that they recognized the act as within the scope of the business confided to him. If one, with notice that his agent assumes to have and to exercise a given power as agent, which he really has not, permits him to hold himself out as his agent clothed with such power, then he will be as fully bound by the act of the agent as though he had the power, in so far as third persons, who rely upon the apparent power, are concerned.

The question of notice to the appellants, of the power which Collins was assuming to exercise as their agent, was one which the evidence justified the court in submitting to the jury. The evidence

shows that prior to the institution of this suit, with the consent of the appellants, suits were brought against them by other persons from whom their agent, Collins, had borrowed money, and that in these suits attachments were sued out and levied. After this a composition was made with all home creditors, except three, including most of those whose claims were for money borrowed by the agent, Collins, and, to secure the parties thereto, a trust deed was made to three trustees, with power to sell property therein named.

Mrs. Collins, in her evidence, states: "We have agreed, in so far as we can, to pay all just claims against said firm, whether for borrowed money or otherwise   *   *   L. W. Cooper was invited to attend the meeting of the creditors of said firm and present his claim, which he declined to do. J. R. B. Barber's claim was not presented until several weeks after the creditor's meeting, and G. G. Hancock's claim was not presented. Thus, those three claims were left out."

Mrs. Douglas testified : "We have agreed to pay all said borrowed money and all other debts due by our said firm, *pro rata*, as far as our assets would do so. A part of the said borrowed money has been paid. I do not consider it honest not to pay borrowed money, or any other just claim, but the plaintiff in this suit has totally disregarded several invitations to meet with the balance of the creditors of our firm and *pro rate* his claim with the balance, and I do not consider a claim for borrowed money superior to any other just debt. We have agreed to pay Mrs. Spencer's claim, and the claims of all others to whom we are owing money, borrowed by James Collins, our agent."

The attorney for appellants testified that "he did not, of course, represent the plaintiff, but would say that there was nothing said, or even whispered, or thought of, between witness and Mrs. Collins and Mrs. Douglas in reference to excluding the plaintiff or discriminating against him, but, on the contrary, he was invited to a creditor's meeting, and he, himself, sent plaintiff word by Harry Bayne, in effect, that while witness understood the personal relations between plaintiff and himself, they had nothing to do with it as a matter of business, and if plaintiff should take position with other attaching creditors he should be paid as soon as he was reached, according to provisions of trust deed."

It is not shown that appellants borrowed any money otherwise than through their agent Collins. The evidence here set out, as well as other facts contained in the record, tended to show a ratification of the several contracts through which Collins, claiming to act as their agent, borrowed money. At the time these matters transpired appellants had full knowledge of what Collins had done, and might well

be held to have ratified his acts.   Story on Agency, 252-257, and citations; Ewell's Evans' Agency, 90.

The charge of the court was a clear and correct exposition of the law applicable to the facts, and the various assignments of error based thereon have been considered, and, in effect, disposed of in what has been already said.   The charges given at request of plaintiff were correct, as was the ruling of the court in admitting evidence that the money borrowed was used in the business of the defendants, and that the agent borrowed money from many other persons, which was used in the same way.

The first charge asked by the defendants, and refused by the court, made the liability of the defendants to depend upon express authority to the agent to borrow money.   Such a rule does not exist in cases of this character, and has application only in cases of special agencies. With agencies, such as conferred on James Collins, the power may exist by implication.   The second instruction asked was contained in the charge given by the court, as was the third charge asked.

There is no error in the judgment and it will be affirmed.

                                                           AFFIRMED.

[Opinion delivered February 12, 1886.]