## FIRESTONE TIRE & RUBBER CO. v. FISK TIRE CO.

### No. 4439.

Court of Civil Appeals of Texas. Amarillo.
Nov. 11, 1935.

Rehearing Denied Dec. 2, 1935.

Stone & Guleke, of Amarillo, for appellant.

E. D. Slough, of Amarillo, for appellee.

MARTIN, Justice.

The Safety First Bus Company had a written contract with appellee, the Fisk Tire Company, which provided in part that tires should be furnished the bus company by said Fisk Company, their use to be paid for on a mileage basis, and providing specially that upon the termination of the said contract all such tires then in possession and in service should be paid for by the bus company.

Negotiations were conducted by appellant to secure a contract to furnish tires to the bus company. These negotiations resulted in an agreement, evidenced by what is referred to as a printed form of contract, and which was presented by appellant to the bus company for execution. This the company refused to do unless appellant would agree to purchase the Fisk tires in use by it and referred to above. Thereupon the local tire salesman for appellant phoned W. B. McGinty, district manager for appellant, and he came to Amarillo from Oklahoma City and continued the negotiations with the bus company. According to the evidence for appellee these negotiations resulted in the verbal promise by McGinty that appellant would pay appellee for the tires in use by the bus company, whereupon the bus company signed a written contract with appellant, agreeing to use its tires; the contract in practically all its terms being substantially the same as the former contract with appellee. A representative of appellant thereafter came to Amarillo to invoice such tires, apparently in accordance with such agreement of purchase.

Appellee sued appellant, alleging, in part: "That on or about July 10, 1931, the Firestone Company, defendant herein, entered into a contract with the bus company, whereby the bus company was to use Firestone tires on their coaches and busses. That as an inducement for the

bus company to enter into said contract with the defendant and use the defendant's tires instead of Fisk tires, and before the bus company would enter into said contract the defendant by and through its agent, W. B. McGinty, agreed with and promised the bus company to take over and purchase all Fisk tires from the bus company, in possession of the said bus company upon termination of bus company's contract with Fisk Company, and pay the Fisk Company, plaintiff herein, for the unused mileage in said tires and relieve the bus company of its obligation and debt to the Fisk Company for the unused mileage."

The jury in response to special issues answered, in substance: That McGinty made the contract pleaded; that same was made to induce the bus company to enter into the contract with appellant; that McGinty had the authority, express and apparent, to make said agreement; and that the value of the tires was $2,406.59. Judgment for this amount was accordingly entered.

Appellant's major contentions on this appeal are:

(1) That the written contract between the bus company and appellant being complete on its face, and the parol agreement sued on being at variance with some of its terms, and there being no pleading or evidence of fraud, mistake, or ambiguity, the parol agreement is not enforceable.

(2) That there is no evidence that McGinty had either express or implied authority to make the alleged parol agreement.

■ Appellant was a foreign corporation. Of necessity it acted through agents. Through these it secured what was thought to be a valuable contract. Naturally, precise and direct evidence of their authority was not easy for appellee to produce. Such authority may be proven circumstantially. McGinty was shown to be district manager. The contract was clearly within the purposes for which such corporation was organized. No kind of denial of his authority from authoritative sources was made in this case. The corporation knew perfectly what his authority was. It stood silent on this question at the trial. If a district manager can't negotiate for a profitable contract in line with the corporate purposes of existence, who may? The corporation secured and retained the benefits of his services, but here seeks to avoid the burdens which went with such benefits. As aptly said: "If the corporation is compelled to employ an agent with such apparent authority as may mislead the public, it should secure one who will not act in excess of his actual authority, and thereby deceive others." 14a C.J. p. 350.

The rule is: "When agency is proved without a showing as to its extent it is presumed to be general and not special—not in respect of everything, however, but only in respect of the business with which the agency is concerned—and third persons dealing with the representative have the right to presume that his agency is general in the absence of notice to the contrary, even though, as between the principal and the agent, it may be only a special agency. The effect of the presumption is to shift the burden of introducing evidence, it being for the principal to show that the act in question was not within the apparent authority of an agent in the position that his representative occupied." 2 Tex.Jur. p. 406.

■ It is fairly inferable from the entire record that McGinty, being the manager of a foreign mercantile corporation through whom alone it could act respecting certain phases of its nonresident business, had the implied authority, in order to secure valuable contracts, to agree to take over tires on hand; these articles being the goods dealt in by appellant. Accordingly, we hold that the facts and circumstances of this case are sufficient to support the jury finding of apparent authority. Cases which in their facts appear to sustain this view are: C. E. Parks Grain Co. v. Townsend (Tex.Civ.App.) 267 S.W. 1011; Missouri Pac. Ry. Co. v. Simons et al., 6 Tex.Civ.App. 621, 25 S.W. 996; J. I. Case Threshing Machine Co. v. Beavers (Tex.Civ.App.) 261 S.W. 440. See especially 10 Tex.Jur. pp. 981 and 982. We quote from the case of Collins & Douglas v. Cooper, 65 Tex. 460, 464: "Every agency 'carries with it, or includes in it, as an incident, all the powers which are necessary or proper, or usual, as means to effectuate the purpose for which it was created,' unless the inference of such powers be expressly excluded by the instrument creating the agency, or by the circumstances of the business to which the agency relates. Incidental powers may be held, in a given

case, to exist by inference or intendment of law. Their existence in another case may be a mere inference of fact arising from the circumstances of the case, and in such a case the question is one for a jury to determine."

There is some testimony of an apparent hearsay nature showing that McGinty possessed express authority which we do not set out, as well also as some claimed to show ratification.

■ The parol agreement sued on was collateral to the main contract. It was for the benefit of a third party. Appellee was not a party to it. It was shown to have operated as an inducement for signing the written contract, and constituted part of the consideration for same. We quote:

" 'The rule permitting parol evidence of a collateral agreement is especially applicable where such agreement constituted part of the consideration of the written agreement, or operated as an inducement for entering into it. * * * It has also been held that where at the time of executing a writing, a stipulation has been entered into, a condition annexed or a promise made by word of mouth, on the faith of which the writing has been executed, parol evidence is admissible, even though it may vary or materially change the terms of the contract, and in such case it is not necessary to allege that the agreement was left out of the contract through fraud, accident or mistake.' 22 C.J. 1253, 1254.

"This quotation is approved by the Commission of Appeals in Callaway v. Albin, 114 Tex. 5, 261 S.W. 372, citing numerous authorities. See, also, [Pope v. Hennessey (Tex.Civ.App.) 38 S.W.(2d) 834; Hall, Commissioner of Insurance & Banking, et al. v. San Jacinto State Bank et al. (Tex.Civ.App.) 255 S.W. 506. * * *

" 'The rule as to the exclusion of oral testimony to contradict or vary the terms of a written contract is applicable only as between the parties to such contract. A stranger to such written instrument is not bound by its terms, and therefore he cannot hold other parties bound by the same.' Pennington v. Bevering et al. (Tex.Civ.App.) 9 S.W.(2d) 401, 403, and authorities cited.

"Long Bell Lumber Co. v. Futch (Tex. Civ.App.) 20 S.W.(2d) 1076; Bagley v. Pollock (Tex.Civ.App.) 19 S.W.(2d) 193, and authorities cited; 17 Tex.Jur. 803, §

359; 3 Jones on Evidence (2d Ed.) 2708, § 1488.

"Since the corporate appellees did not claim under the written instrument asserted by appellant, and were not privies thereto, they were strangers claiming adversely to appellant's contention, and this parol testimony was admissible." Southwestern Public Service Co. v. Smith (Tex. Civ.App.) 48 S.W.(2d) 456, 458.

"The rule is well established in this state that testimony which merely shows matter of inducement leading to the execution of the contract or which explains the circumstances under which it was executed is admissible and in no sense violates the parol evidence rule. It is further held in numerous cases that the parol evidence rule does not apply to collateral undertakings. National Novelty Import Co. v. Duncan (Tex.Civ.App.) 182 S.W. 888; Pope v. Hennessey (Tex.Civ.App.) 38 S.W.(2d) 834; Taylor Milling Co. v. American Bag Co. (Tex.Civ.App.) 230 S. W. 782; R. L. Heflin, Inc., v. Texas Oceanic S. S. Co. (Tex.Civ.App.) 53 S.W. (2d) [133], 135; Loveless v. Johnson (Tex.Civ.App.) 274 S.W. 658; Norm Co. v. City Drug Stores (Tex.Civ.App.) 59 S.W.(2d) 270; Southwestern Public Service Co. v. Smith (Tex.Civ.App.) 48 S.W. (2d) 456; Bell v. Mulkey (Tex.Com.App.) 16 S.W.(2d) 287; Id. (Tex.Civ.App.) 7 S.W.(2d) 115; 17 Tex.Jur. pp. 825, 826." Huddleston et al. v. Wheeler Lumber, Bridge & Supply Co. (Tex.Civ.App.) 75 S.W.(2d) 715, 716.

Nor do we think the parol agreement necessarily varies or contradicts the following portion of the written one as appellant claims:

"Firestone Company agrees to furnish and Operating Company agrees to use exclusively tire equipment furnished by Firestone Company. * * *

"Tires on buses and in possession of Operating Company when this contract becomes effective shall, at the option of Operating Company, be serviced by Operating Company until worn out or serviced by Firestone Company until worn out at the rate of twenty-five hundredths cents ($.0025) per bus mile. Operating Company agrees to pay Firestone Company for such service rendered on or before the tenth of the following month."

This contract also contains the following stipulation: "Term of Contract—This contract shall be and remain in full force

and effect for a period commencing on the 1st day of August, 1931, and expiring on the 31st day of October, 1933."

The bus company contract was not terminated with Fisk Tire Company until the following October. The circumstances sufficiently indicate that the tires to be serviced as shown above could refer either to those owned by the bus company or to the Fisk tires being temporarily used until Firestone tires were put in use.

Judgment affirmed.