# Supreme Court of Texas

======

No. 21-0614

======

Cameron International Corporation
a/k/a Cameron Systems Corporation,

*Petitioner*,

v.

Hugo A. Martinez and Dolores Ramirez, Individually and on Behalf of the Estate of Javier Garcia, Jr., Deceased; Javier Mayagoitia, Sr., Individually and as Independent Administrator of the Estate of Javier Mayagoitia, Jr., Deceased; Julieta Taylor; Osman Martinez; and Jeanne Chavez, Individually and as Next Friend and Guardian of M.C., a Minor Child,

*Respondents*

======

On Petition for Review from the
Court of Appeals for the Eighth District of Texas

======

**PER CURIAM**

In this vicarious liability case, we decide whether an oilfield worker acted within the course and scope of his employment when he was involved in a deadly car accident. The accident occurred as the worker drove toward an oilfield drilling site upon completing personal errands.

The trial court granted summary judgment in favor of the company alleged to be the worker's employer. The court of appeals reversed, holding that fact issues existed as to whether the worker had the necessary relationship with the company to give rise to vicarious liability and, if so, whether the worker was acting within the course and scope of that employment at the time of the accident.

We hold that the court of appeals incorrectly relied upon the "special mission" exception in declining to apply the general rule that an employer is not vicariously liable for negligence arising from employee travel to and from work. Accordingly, we reverse its judgment and reinstate the trial court's summary judgment for the company.[1]

**I**

In 2015, Cameron International Corporation agreed to provide flowback well testing at ConocoPhillips Company's "Blue Marlin" drilling worksite. The worksite, near Orla, Texas, is about sixty miles northwest of Pecos, on United States Highway 285.[2] Cameron engaged David Boone Oilfield Consulting, a placement agency, to find contract labor to assist Cameron with the project. The agency placed John Mueller, an experienced flowback well-tester, to work at the site from June 5 to June 8, 2015.

---

[1] Given our disposition, we need not address the court of appeals' additional conclusion that the evidence raises a fact issue as to whether an employment relationship existed between the company and the worker.

[2] United States Highway 285 is a north-south highway running approximately 846 miles from Sanderson, Texas, through New Mexico, to Denver, Colorado. US 285, US ENDS, https://www.usends.com/285.html (last visited Dec. 22, 2022).

On June 8, Mueller completed his shift, and Cameron released him from the Blue Marlin job. Mueller's Cameron supervisor asked him to remain on voluntary standby for potential work at a different site the next day. The supervisor also invited Mueller to dinner in Pecos, and Mueller accepted. Mueller drove to Pecos in his personal truck and had dinner with his supervisor at a restaurant. After dinner, Mueller drove to a nearby store to purchase food and drink for his personal needs and then to a gas station to refuel his truck. Anticipating that Cameron would direct him to a new worksite the next day, Mueller planned to spend the night at the Cameron trailer he had occupied while working at the Blue Marlin site.

After leaving the gas station, Mueller headed north on Highway 285. Seven miles from Pecos, he was involved in a car accident with Javier Mayagoitia, Jr.[3] Mayagoitia and one of his passengers died. Two other passengers were injured.

Respondents here are the accident survivors and the decedents' estates. They sued Mueller, Cameron, and others, alleging that Mueller's negligence caused the accident and that Cameron is vicariously liable for Mueller's negligence. Cameron moved for a traditional and a no-evidence summary judgment, arguing that it was not vicariously liable for Mueller's conduct because he was neither its

---

[3] The police report reflects that Mueller and another driver in front of him veered into the southbound lane of travel to avoid a hazard in the northbound lane. When the vehicle in front of Mueller moved back into the northbound lane, Mueller faced Mayagoitia's oncoming southbound vehicle. Both vehicles swerved toward the west, ultimately colliding and coming to rest in a ditch on the side of the highway.

employee nor acting within the scope of any employment at the time of the accident. Respondents countered that Mueller was both. The trial court granted Cameron's motions, and it severed and abated the claims against Mueller, individually.

The court of appeals reversed, holding that the summary judgment evidence raised fact issues, among them whether Mueller had acted within the course and scope of his employment at the time of the accident. 624 S.W.3d 241, 258 (Tex. App.—El Paso 2021). The court of appeals held that some evidence supported the claim that Mueller's purchases of food and water during his trip constituted "a necessary service in furtherance of Cameron's business," triggering the special mission exception. *Id.*

**II**

In *Painter v. Amerimex Drilling I, Ltd.*, we examined the special-mission exception to the general rule that an employer is not vicariously liable for an employee's negligent acts during travel to and from work. 561 S.W.3d 125 (Tex. 2018). Similar to this case, *Painter* concerned a vicarious liability claim arising from an automobile accident that occurred when a drilling-company employee drove three coworkers back to their employer-provided bunkhouses after a shift. *Id.* at 129. The trial court granted summary judgment to the employer, and the issue on appeal was whether some evidence could support a finding that the employee had acted in the course and scope of his employment at the time of the accident. *Id.* at 130.

As we observed in *Painter*, to establish a claim for vicarious liability, a plaintiff must show that a worker "was acting in the course

4

and scope of his employment" at the time of the negligent conduct. *Id.* at 131. Under the "coming-and-going rule," an employee does not act within the course and scope of his employment when traveling to and from work. *Id.* at 139. The rationale that informs the rule is that travelers on public roads are equally susceptible to the hazards of doing so, whether employed or not. *See Leordeanu v. Am. Prot. Ins. Co.*, 330 S.W.3d 239, 241-42 & nn.6-7 (Tex. 2010). Such travel hazards do not arise out of the business of an employer; thus, the law does not hold the employer liable for injuries resulting from engaging in these risks. *Id.* (observing that the special-mission exception does not extend to prosaic risks).

We further observed that the special-mission exception to the coming-and-going rule may apply when "travel involves the performance of regular or specifically assigned duties for the benefit of the employer." *Painter*, 561 S.W.3d at 139. For example, an employee may be on a special mission when traveling to an employer-mandated seminar. *Chevron, U.S.A., Inc. v. Lee*, 847 S.W.2d 354, 356 (Tex. App.—El Paso 1993, no writ), *cited approvingly in Painter*, 561 S.W.3d at 136 ("[W]e find helpful guidance in two cases."). Accordingly, in *Painter*, we held that some evidence demonstrated that the employee had acted within the course and scope of his employment while driving coworkers to their bunkhouses from the worksite at his employer's direction. 561 S.W.3d at 139.

In contrast, the summary judgment evidence in this case establishes that the special-mission exception does not apply. According to the evidence, neither Cameron nor its supervisory personnel directed

Mueller to travel to Pecos or to purchase food, water, or fuel for other workers or for the worksite generally. Instead, Mueller testified that he decided for himself to travel to Pecos on his own time to have dinner and to restock his personal groceries and fuel. Mueller's supervisor similarly testified that Cameron workers were individually responsible for obtaining their own food and water.

In rejecting this evidence, the court of appeals observed that, "[s]urely, having access to drinking water during a 12-hour shift, in hundred-degree weather, at a remote worksite, was necessary and benefited Cameron by ensuring workers were physically able to perform—aside from the obvious fact of it being vital to retaining functioning workers." 624 S.W.3d at 258. This rationale, however, proves too much. Nearly every task that supports a worker's personal needs, including travel to and from work, indirectly benefits the employer. By traveling to the workplace, a worker makes his services available, "and in that sense he furthers the affairs or business of his employer by making the journey." *Shelton v. Standard Ins. Co.*, 389 S.W.2d 290, 292 (Tex. 1965). Not every journey, however, falls within the course and scope of an employment relationship. *Id.* To except from the general rule Mueller's travel to obtain personal groceries and fuel at his choice—and not at Cameron's direction—would turn nearly any personal grocery errand into a special mission on an employer's behalf, a concept that we rejected in *Painter*. *See* 561 S.W.3d at 138 (explaining that an employee's decision to "conduct a personal errand" while otherwise engaged in his employer's business does not give rise to vicarious liability for travel in connection with that errand). Workers

6

often travel for personal necessities during the workday or leave for a meal before returning to work, but these activities do not arise from the business of the employer. Rather, they are daily tasks in which workers and nonworkers alike engage, carrying the same attendant risks. *See Smith v. Tex. Emps.' Ins. Ass'n*, 105 S.W.2d 192, 193 (Tex. [Comm'n Op.] 1937) (discussing the limits of vicarious liability, which does not extend to prosaic risks). In determining that purchases of personal food and water raise some evidence that the special-mission exception applies, the court of appeals did not recognize the well-settled limits of the doctrine and its underlying rationale.

Respondents emphasize that Mueller occasionally shared the water that he purchased with coworkers while at the worksite. Persuaded by this point, the court of appeals observed that it was a "basic notion that obtaining drinking water and food for the crew could very likely constitute a necessary service in furtherance of Cameron's business." 624 S.W.3d at 258. A worker's choice to share personal supplies, however, does not transform their acquisition into a special mission for an employer.

Respondents' other arguments are similarly unavailing. First, they contend that some evidence shows that Cameron generally authorized Mueller's travel to Pecos, and thus Mueller had implied authority to engage in travel on Cameron's behalf. *See Collins v. Cooper*, 65 Tex. 460, 464 (1886) ("Every agency carries with it, or includes in it, as an incident, all the powers which are necessary or proper, or usual, as means to effectuate the purpose for which it was created." (internal quotation marks omitted)). In *Painter*, however, we rejected the

7

contention that general authority suffices to show that an employee is acting in furtherance of the employer's business at the time of travel. 561 S.W.3d at 132-33. Rather, the general right to control the work of an employee may answer whether the law recognizes an employment relationship sufficient to impose vicarious liability. *Id.* When such a relationship exists, however, imposing liability in a particular instance "hinges on an objective assessment of whether the employee was doing his job" at the time. *Id.* at 132. "The employer's right to control the work, having already been determined in establishing the employer-employee relationship, is not part of this analysis." *Id.* at 132-33. Thus, even assuming implied general authority, Mueller was not acting within the scope of that authority at the time of the accident.

Respondents further emphasize that Cameron paid Mueller a $250 transportation allowance. But payment of a travel allowance is not sufficient to create a fact question as to whether an employee was acting within the course and scope of employment at a specific point. *See Pilgrim v. Fortune Drilling Co.*, 653 F.2d 982, 987-88 (5th Cir. Unit A Aug. 1981) (applying Texas law), *cited approvingly in Painter*, 561 S.W.3d at 136. Applying the special-mission exception "depends heavily on the facts and circumstances of the case." *Painter*, 561 S.W.3d at 136. In this case, the travel allowance does not overcome the undisputed evidence that Mueller was returning from running personal errands at the time of the accident.

Lastly, Respondents argue that a workers' compensation line of authority, recognized in *Janak v. Texas Employers' Insurance Ass'n*, 381 S.W.2d 176 (Tex. 1964), provides the better rule. In *Janak*, an employee

8

was entitled to workers' compensation when his "deviation to obtain [ice] was impliedly directed by the employer." *Id.* at 182. However, Texas law has long recognized the distinction between workers' compensation claims under their statutory framework and the imposition of vicarious liability under the common law. *See Shelton*, 389 S.W.2d at 291-92. In *Shelton*, a truck driver was assisting with relocating his employer's corporate offices. He was struck by an automobile as he attempted to walk from his motel across the street to a café. *Id.* In upholding a claim for workers' compensation, we observed that "[i]t could not be seriously contended that petitioner, while crossing the street, was in the scope of his employment for establishing liability under the doctrine of respondeat superior." *Id.* at 293. In short, the common law principles that govern vicarious liability differ from the statutory definitions and framework that govern workers' compensation claims. *See Waste Mgmt. of Tex., Inc. v. Stevenson*, 622 S.W.3d 273, 281 (Tex. 2021) (quoting *Garza v. Exel Logistics, Inc.*, 161 S.W.3d 473, 481 (Tex. 2005)) (discussing this distinction).[4] Though the Texas Workers' Compensation Act may define injuries arising from trips for necessities as compensable, such trips are not generally special missions within the course and scope of employment under the doctrine of respondeat superior. *See Painter*, 561 S.W.3d at 138 (observing that the law would not render an employer vicariously liable "to the extent" a worker could

---

[4] "Courts in other jurisdictions have similarly recognized the distinction between workers' compensation cases and the respondeat superior doctrine for purposes of analyzing exceptions to the going-and-coming rule." *Stokes v. Denver Newspaper Agency, LLP*, 159 P.3d 691, 695 (Colo. App. 2006) (collecting cases).

"conduct a personal errand while carrying out" a responsibility to the employer). Accordingly, the statutory definition of course and scope for workers' compensation insurance purposes does not inform the concept under the common law for the purpose of imposing vicarious liability against an employer.

* * *

We hold that a personal trip for groceries does not fall within the special-mission exception to the general rule that an employer is not vicariously liable for an employee's negligent acts while the employee travels to and from work. Without hearing oral argument, *see* TEX. R. APP. P. 59.1, we reverse the judgment of the court of appeals and render judgment for Cameron International Corporation.

**OPINION DELIVERED**: December 30, 2022