# United States Court of Appeals
# for the Fifth Circuit

_____

United States Court of Appeals
Fifth Circuit

**FILED**
March 8, 2024

Lyle W. Cayce
Clerk

No. 23-10491

_____

Marvin Jackson,

*Plaintiff—Appellant*,

*versus*

World Wrestling Entertainment, Incorporated,

*Defendant—Appellee*.

_____

Appeal from the United States District Court
for the Northern District of Texas4
USDC No. 4:23-CV-172

_____

Before Stewart, Clement, and Ho, *Circuit Judges*.
James C. Ho, *Circuit Judge*:

Marvin Jackson alleges that he was injured at a World Wrestling Entertainment event that he attended with his nephew. All tickets required the buyer to accept various terms and conditions—including an arbitration agreement. Buyers were advised that entering the event would constitute acceptance of the arbitration agreement.

The district court rejected Jackson's argument that he is somehow not bound to arbitrate just because he didn't purchase the ticket himself, but instead received the ticket as a gift from his nephew. We agree with the

No. 23-10491

district court.  An individual who permits a third party to present a ticket for admittance to an event on his behalf is bound by the terms and conditions governing the use of that ticket.  Accordingly, we affirm.

* * *

In April 2022, Jackson and his nephew, Ashton Mott, attended WrestleMania 38, an event hosted by WWE at AT&T Stadium in Arlington, Texas.  Mott purchased the tickets for himself and Jackson on SeatGeek.com as a surprise gift for Jackson's birthday.

To purchase a ticket to the event, SeatGeek.com users were required to agree to the AT&T Stadium COVID waiver—which included an arbitration agreement.  This waiver stated, in bold print, that entering the event pursuant to the purchased tickets constitutes consent to arbitrate.

After completing the purchase, ticket purchasers received a confirmation email, which also prominently stated that use of the tickets would constitute acceptance of the arbitration agreement.

To access tickets, users were required to download either the SeatGeek app or the Dallas Cowboys app.  Accessing the tickets through either app prompted a Know Before You Go notification, which again included a COVID waiver containing the arbitration agreement.

After purchasing the tickets, Mott stored them on his phone and presented both his own ticket and Jackson's ticket to the attendant when he and Jackson entered the stadium.

Jackson's seat was next to the stage.  Jackson alleges that a pyrotechnics blast at the beginning of the performance caused him to lose most of his hearing in his left ear.  He sued WWE in Texas state court, alleging that WWE's negligence caused his hearing loss.

No. 23-10491

WWE removed the case to federal court, and then moved to compel arbitration. The district court granted WWE's motion to compel, holding that Mott acted as Jackson's agent, and that Jackson's use of the ticket charged him with notice of its terms and bound him to the arbitration agreement.

Jackson appealed, arguing solely that Mott did not have either actual or apparent authority to act on Jackson's behalf under Texas agency law, and that the arbitration agreement is therefore unenforceable against Jackson. *See First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) (noting that "courts generally . . . should apply ordinary state-law principles that govern the formation of contracts" when determining whether parties have agreed to arbitrate).

We agree with the district court that Jackson is bound to arbitrate.

The relevant facts in this case concerning the existence of an agency relationship are undisputed, as Jackson acknowledges. This appeal therefore presents only a question of law, which we review *de novo*. *See Am. Int'l Trading Corp. v. Petroleos Mexicanos*, 835 F.2d 536, 539 (5th Cir. 1987).

"[N]onparties may be bound to an arbitration clause when the rules of law or equity would bind them to the contract generally." *Taylor Morrison of Tex., Inc. v. Ha*, 660 S.W.3d 529, 532 (Tex. 2023) (per curiam) (internal quotation omitted). One way of binding a non-signatory to an arbitration agreement is through the application of traditional agency principles. *Jody James Farms, JV v. Altman Grp., Inc.*, 547 S.W.3d 624, 633 (Tex. 2018).

Although Mott was not acting subject to Jackson's authorization or control when he purchased the tickets as a surprise gift, he did act as Jackson's agent when Jackson allowed him to present the ticket on his behalf for admittance to the stadium. *See, e.g., Cmty. Health Sys. Pro. Servs. Corp. v. Hansen*, 525 S.W.3d 671, 691 (Tex. 2017) (noting that an agency relationship

3

is created when the agent "consent[s] to act on the principal's behalf and subject to the principal's control" and the principal "authoriz[es] . . . the agent to act on his behalf").

Accepting the arbitration agreement—a required condition for Jackson to enter the event—was well within Mott's implied authority as Jackson's agent to gain his entry into the stadium. *See*, *e.g.*, *Cameron Int'l Corp. v. Martinez*, 662 S.W.3d 373, 377 (Tex. 2022) (per curiam) ("Every agency carries with it, or includes in it, as an incident, all the powers which are necessary or proper, or usual, as means to effectuate the purpose for which it was created.") (quoting *Collins v. Cooper*, 65 Tex. 460, 464 (1886)). Event attendees routinely purchase and present tickets on behalf of family and friends, and in doing so, accept the required terms and conditions. Moreover, the purchase terms and order confirmation email made clear that use of the ticket constituted acceptance of the arbitration agreement. Accordingly, Mott and Jackson had ample notice that using the ticket to enter the stadium would bind them both to the arbitration agreement. *See*, *e.g.*, *Grissom v. Watson*, 704 S.W.2d 325, 327 (Tex. 1986) ("As a general rule, it is universally recognized that notice to the agent is notice to the principal.") (internal quotation omitted).

The arbitration agreement is therefore enforceable against Jackson. Accordingly, we affirm the order compelling arbitration.