Liana **LEORDEANU**, Petitioner,

v.

**AMERICAN PROTECTION INSURANCE COMPANY,** Respondent.

No. 09–0330.

Supreme Court of Texas.

Argued April 15, 2010.

Decided Dec. 3, 2010.

Fisher Stewart, Law Offices of Wade F. Stewart, Houston, TX, for Liana Leordeanu.

Jack W. Latson, Robert D. Stokes, Fla-hive, Ogden & Latson, Austin, TX, for American Protection Insurance Co.

Elaine M. Chaney, Director of Legal Services, Austin, TX, Gary L. Kilgore, Office of Injured Employee Counsel, Associate Director of Legal Services, Austin, TX, for Amicus Curiae Office of Injured Employee Counsel.

Justice HECHT delivered the opinion of the Court, in which Chief Justice JEFFERSON, Justice WAINWRIGHT, Justice MEDINA, Justice GREEN, Justice WILLETT, Justice GUZMAN, and Justice LEHRMANN joined.

Generally, traveling home from work is not in the "course and scope of employment" as defined by the Texas Workers' Compensation Act.[1] But is traveling from one workplace to another while on the way home? The court of appeals answered no.[2] We disagree.

Petitioner Liana Leordeanu, a pharmaceutical sales representative officing out of her northwest Austin apartment, drove her company car to business appointments in Bastrop some forty miles southeast, then back to a south Austin restaurant for dinner with clients. Afterward, her route home took her past a company-provided self-storage unit, adjacent her apartment complex, in which she kept drug samples and marketing materials. She intended to stop at the unit and empty her car of business supplies in preparation for an

Bradley Dean McClellan, Law Offices of Richard Pena, P.C., Austin, TX, Wade

---

1. *Evans v. Ill. Emp'rs Ins. of Wausau,* 790 S.W.2d 302, 304 (Tex.1990) ("In general, injuries which occur while the employee is traveling to or from work are not compensable under the Act.").

2. 278 S.W.3d 881 (Tex.App.-Austin 2009).

out-of-town personal trip the next day. But midway there, she ran off the highway and was seriously injured.

Respondent, American Protection Insurance Company, denied Leordeanu's claim for workers' compensation. The Texas Department of Insurance Workers' Compensation Commission Division upheld APIC's decision, concluding that Leordeanu was not in the course and scope of employment at the time of her accident, and she appealed. A jury found to the contrary, and the trial court rendered judgment on their verdict for Leordeanu. A divided court of appeals reversed and rendered judgment for APIC, holding that there was no evidence to support the verdict.[3]

The 1917 enactment of the Texas Workers' Compensation Act defined a compen-

sable injury—one "sustained in the course of employment"—to include

all ... injuries of every kind and character having to do with and originating in the work, business, trade or profession of the employer received by an employee while engaged in or about the furtherance of the affairs or business of his employer whether upon the employer's premises or elsewhere.[4]

The definition had two components: the injury had to (1) relate to or originate in, and (2) occur in the furtherance of, the employer's business. Both had to be satisfied.[5]

The Act did not require that an employee be injured on the employer's premises. Cases applying the Act concluded that work-required travel is in the course of employment,[6] but not, as a general rule,

---

**3.** *Id.* at 891.

**4.** Act of Mar. 28, 1917, 35th Leg., R.S., ch. 103, § 1, Part IV, § 1, 1917 Tex. Gen. Laws 269, 292, formerly Tex.Rev.Civ. Stat. Ann. art. 8309, § 1 (1925).

**5.** *Tex. Emp'rs Ins. Ass'n v. Page*, 553 S.W.2d 98, 99 (Tex.1977) ("Thus, for a claimant to recover under our statute he must meet two requirements. First, the injury must have occurred while the claimant was engaged in or about the furtherance of his employer's affairs or business. Second, the claimant must show that the injury was of a kind and character that had to do with and originated in the employer's work, trade, business or profession."); *Smith v. Texas Emp'rs' Ins. Ass'n*, 129 Tex. 573, 105 S.W.2d 192, 193 (1937) ("It is now firmly settled by the decisions construing our statute that in order that an employee may recover under the provisions of [the Act], proof that his injury occurred, while he was engaged in or about the furtherance of the employer's affairs or business is not alone sufficient. He must also show that his injury was of such kind and character as had to *do with* and *originated in* the employer's work, trade, business, or profession." (internal quotation marks and brackets omitted) (emphasis in original)).

**6.** *Smith*, 105 S.W.2d at 193 ("[E]mployees such as deliverymen, messengers, [and] collectors, ... [are] by the very nature of the work ... subjected to the perils and hazards of the streets; in which case it may be properly said that the risks are inherent in and incident to the employment."); *Jecker v. W. Alliance Ins. Co.*, 369 S.W.2d 776, 779 (Tex. 1963), *overruled in part on other grounds by McKelvy v. Barber*, 381 S.W.2d 59 (Tex.1964) ("[T]he Legislature surely did not intend to provide that an employee whose employment requires him to travel at his own expense in his own automobile on streets and highways, either constantly or intermittently, should be denied compensation if accidently injured while thus exposed to risks growing out of his employment. Any such holding would be wholly unjust to salesmen, servicemen, repairmen, deliverymen, and a host of others who may be required to use their own automobiles in their work, and would be a strict rather than a liberal interpretation of the Workmen's Compensation Act."); *Shelton v. Standard Ins. Co.*, 389 S.W.2d 290, 293 (Tex. 1965) ("Most courts which have considered the question regard an employee whose work entails travel away from the employer's premises as being in the course of his employment when the injury has its origin in a risk created by the necessity of sleeping or eating away

travel between home and work. An employee's travel to and from work makes employment possible and thus furthers the employer's business, satisfying the second component of the definition, but such travel cannot ordinarily be said to originate in the business, the requirement of the first component, because "[t]he risks to which employees are exposed while traveling to and from work are shared by society as a whole and do not arise as a result of the work of employers."[7] We have explained it this way:

> When an ordinary workman who lives at home and works at a fixed location is injured while going to or returning from work, his presence at the place of injury is causally related to the employment.

The services for which he is employed cannot be performed unless he goes regularly to the place where the work is to be done, and in that sense he furthers the affairs or business of his employer by making the journey. The problem in each case is to determine whether the relationship between the travel and the employment is so close that it can fairly be said that the injury had to do with and originated in the work, business, trade or profession of the employer.[8]

Chief Justice Calvert referred to the exclusion of travel between work and home from the course and scope of employment as the "coming and going rule"[9] and noted that the case law had recognized several exceptions.[10]

---

**7.** *Evans v. Ill. Emp'rs Ins. of Wausau,* 790 S.W.2d 302, 305 (Tex.1990) ("Had [the workers] been injured while en route from the safety meeting to the primary work site ..., these injuries would have been covered by the Act. However, since neither of them had begun work, their injuries fall squarely within the 'coming and going' rule and they are thereby precluded from recovering workers' compensation benefits."); *accord Smith,* 105 S.W.2d at 193 ("It has further been firmly settled that compensation is not allowable for injuries to employees while going to or returning from the place of their employment, except in certain particular cases. This conclusion is based on the premise that one injured upon the streets or highways while going to or from his work suffers his injury as a consequence of risks and hazards of the streets and highways to which all members of the public are alike subject, and not as a consequence of risks and hazards having to do with and originating in the work, business,

from home, except when a distinct departure on a personal errand is shown."); *see, e.g., Emp'rs' Indem. Corp. v. Kirkpatrick,* 214 S.W. 956, 957 (Tex.Civ.App.-Austin 1919, writ dism'd w.o.j.) (a laundry employee, though he had put away his horse and wagon in his employer's stables for the day, went to collect a bill for his employer on his way home, as he and other employees frequently did, and so was injured in the course and performance of his duties).

trade or profession of the employer." (citations and internal quotation marks omitted)).

**8.** *Shelton,* 389 S.W.2d at 292.

**9.** *Janak v. Tex. Emp'rs' Ins. Ass'n,* 381 S.W.2d 176, 178 (Tex.1964) ("The general rule ... is that an injury occurring in the use of the public streets or highways in going to and returning from the place of employment is noncompensable. The rule is known as the 'coming and going' rule." (citation omitted)).

**10.** *Am. Gen. Ins. Co. v. Coleman,* 157 Tex. 377, 303 S.W.2d 370, 374 (1957) ("The general rule is well settled that an injury incurred in the use of public streets or highways in going to and returning from the place of employment is not a compensable injury because not incurred in the course of the employment as required by [the Act]. There are exceptions to the rule. An injury incurred in going to or returning from work is held to be in the course of a workman's employment where the means of transportation is furnished by the employer. So, also, where the employer pays another to transport the injured employee. An injury is held to be in the course of a workman's employment if in going to or returning from his place of employment or his place of residence he undertakes a special mission at the direction of his employer, or performs a service in furtherance of his employer's business with the express or implied approval of his employer.").

Another rule that developed in the case law is this: an employee traveling for both business and personal purposes is in the course and scope of employment only if the business purpose is both a necessary and sufficient cause for the travel. This "dual purpose" rule was explained by Chief Judge Cardozo in *Marks' Dependents v. Gray*, as follows:

> The test in brief is this: If the work of the employee creates the necessity for travel, he is in the course of his employment, though he is serving at the same time some purpose of his own. If, however, the work has had no part in creating the necessity for travel, if the journey would have gone forward though the business errand had been dropped, and would have been canceled upon failure of the private purpose, though the business errand was undone, the travel is then personal, and personal the risk.[11]

We indicated our approval of the rule in a 1944 case.[12]

In 1957, the Legislature codified the "coming and going" rule and its exceptions in one sentence, and the "dual purpose" rule in another sentence,[13] and placed both in a new section of the Act as follows:

> Unless transportation is furnished as a part of the contract of employment or is paid for by the employer, or unless the means of such transportation are under the control of the employer, or unless the employee is directed in his employment to proceed from one place to another place, such transportation shall not be the basis for a claim that any injury occurring during the course of such transportation is sustained in the course of employment. Travel by an employee in the furtherance of the affairs or business of his employer shall not be the basis for a claim that an injury occurring during the course of such travel is sustained in the course of employment, if said travel is also in furtherance of the personal or private affairs of the employee, unless the trip to the place of occurrence of said injury would have been made even had there been no personal or private affairs of the employee to be furthered by said trip, and unless said trip would not have been made had there been no affairs or business of the employer to be furthered by said trip.[14]

Then in 1989, the Legislature rewrote this provision and the 1917 general definition, and combined them in a single section of the Act.[15] The result, with minor edits in 1993,[16] is now section 401.011(12) of the Texas Labor Code, which states:

> "Course and scope of employment" means an activity of any kind or character that has to do with and originates in the work, business, trade, or profession

11. 167 N.E. 181, 183 (N.Y.1929). *See* 1 ARTHUR LARSON & LEX K. LARSON, LARSON'S WORKERS' COMPENSATION LAW § 16.02 (2010) (stating that the rule in *Marks* has been "accepted by the great majority of jurisdictions").

12. *McKim v. Commercial Standard Ins. Co.*, 179 S.W.2d 357, 359 (Tex.Civ.App.-Dallas 1944, writ ref'd).

13. *Janak*, 381 S.W.2d at 179–180 (stating that the Legislature adopted the "dual purpose" rule and that "[t]he generally accepted test to be used in applying the 'dual purpose' rule is

found in the opinion of Chief Judge Cardozo in [*Marks* ]").

14. Act of May 23, 1957, 55th Leg., R.S., ch. 397, § 3, 1957 Tex. Gen. Laws 1186, 1192–1193.

15. Act of Dec. 12, 1989, 71st Leg., 2d C.S., ch. 1, § 1.03(12), 1989 Tex. Gen. Laws 1, 2, formerly TEX.REV.CIV. STAT. ANN. art. 8308–1.03(12).

16. Act of May 12, 1993, 73rd Leg., R.S., ch. 269, § 1, 1993 Tex. Gen. Laws 987, 1131.

of the employer and that is performed by an employee while engaged in or about the furtherance of the affairs or business of the employer. The term includes an activity conducted on the premises of the employer or at other locations. The term does not include:

(A) transportation to and from the place of employment unless:

(i) the transportation is furnished as a part of the contract of employment or is paid for by the employer;

(ii) the means of the transportation are under the control of the employer; or

(iii) the employee is directed in the employee's employment to proceed from one place to another place; or

(B) travel by the employee in the furtherance of the affairs or business of the employer if the travel is also in furtherance of personal or private affairs of the employee unless:

(i) the travel to the place of occurrence of the injury would have been made even had there been no personal or private affairs of the employee to be furthered by the travel; and

(ii) the travel would not have been made had there been no affairs or business of the employer to be furthered by the travel.[17]

In the parlance of insurance policies, the general definition describes coverage, and travel must meet both its components to be in the course and scope of employment.[18] Subsections (A) and (B) are exclusions, each followed by exceptions.

Subsection (A) has three, disjunctive exceptions; if any one is met, the exclusion does not apply, and travel to and from work is not excluded from the course and scope of employment. Subsection (B) has two, conjunctive exceptions and applies unless both are met. Subsection (B) is somewhat convoluted. More simply put, it does not exclude work-required travel from the course and scope of employment merely because the travel also furthers the employee's personal interests that would not, alone, have caused him to make the trip.

Although the Act was completely overhauled in 1989, the operative language of section 401.011(12) largely tracks the 1917 definition of course of employment and the 1957 provision codifying the two travel rules. The revisions to those provisions appear to have been attempts at clarification rather than substantive changes. But the 1957 statute's statement of the two travel rules, in two sentences one after the other, gave no indication of any relationship between them, while section 401.011(12)'s rewrite, listing them as two disjunctive exclusions, can be read to suggest that travel is excluded from the course and scope of employment if either one applies. The difficulty with this construction is that travel between work and home is just one kind of dual-purpose travel, benefitting both employer and employee. If both subsections (A) and (B) apply in every situation, (A) becomes merely a specialized application of (B).

The two rules did not develop that way in the case law. The "dual purpose" rule

---

17. Tex. Lab.Code § 401.011(12).

18. *Tex. Gen. Indem. Co. v. Bottom*, 365 S.W.2d 350, 353–354 (Tex.1963) ("The [statute] does not provide that an employee shall be deemed or may be regarded as being in the course of his employment when any one of the specified conditions is satisfied.... It is still necessary ... for the claimant to show that the injury is of a kind and character that had to do with and originated in the work, business, trade or profession of his employer and was received while he was engaged in or about the furtherance of the affairs or business of the employer.").

was devised for the distinct situation in which the employee is traveling between work and a place other than home. In *Marks*, for example, the employee was injured en route to a nearby town to meet his wife, who was visiting relatives. His employer had given him a "trifling" job to do while there, but Marks would not have gone for that reason alone, nor would he have cancelled had his employer said never mind.[19] The court held that he was not injured in the course and scope of employment, making no mention of the "coming and going" rule.[20] In each of the two cases in which we have applied subsection (B), *Davis v. Argonaut Southwest Insurance Co.*[21] and *Jecker v. Western Alliance Insurance Co.*,[22] the employee had left work to travel out-of-town for both business and personal reasons and was killed in a car accident on the return trip.[23] In both cases, we held that there was evidence to support jury findings that the deaths were compensable under the "dual purpose" rule.[24] The "coming and going" rule developed separately, specifically for travel between home and work.[25]

If the "dual purpose" rule also applied to travel to and from work, homeward-bound travel could never be in the course and scope of employment. It could satisfy subsection (A) and both components of the general definition, but it could never meet subsection (B)(ii). Subsection (B)(ii) excepts dual-purpose travel from the exclusion only if it would not have been made had it not furthered a business purpose. But any employee intending to take care of business on the way home, if the business purpose evaporates, will still go home. Subsection (A) provides that travel home from work may be in the course and scope of employment if the employer furnishes, pays for, or controls the means of transportation, or directs the employee to proceed from one place to another along the way—in short, if the travel furthers the employer's interest. But if subsection (B)(ii) cannot be satisfied, if the employee would further his own interest [26] by going home regardless of whether subsection (A)(I)-(iii) applied, the travel could not be in the course and scope of employment. Applying subsection (B)(ii) to employees coming home from work limits subsection (A) to a "going" rule.

That is the problem in the case at hand. The court of appeals held that there was no evidence to support the jury's finding

19. *Marks' Dependents v. Gray*, 251 N.Y. 90, 167 N.E. 181, 182 (1929).

20. *Id.* at 183.

21. 464 S.W.2d 102, 102–103 (Tex.1971).

22. 369 S.W.2d 776, 779 (Tex.1963), *overruled in part on other grounds by McKelvy v. Barber*, 381 S.W.2d 59 (Tex.1964).

23. *Davis*, 464 S.W.2d at 102–103; *Jecker*, 369 S.W.2d at 779.

24. *Davis*, 464 S.W.2d at 104; *Jecker*, 369 S.W.2d at 781.

25. *See Evans*, 790 S.W.2d at 304–305 (noting that an "exception has been made for a 'special mission' when an employee is 'directed in his employment to proceed from one place to another place' " and citing provision recodified as § 401.011(12)(B); further noting that the workers' "safety meetings were not 'special missions' but rather a regularly scheduled part of each employee's job"; and concluding that the workers fell within the general "coming and going" rule, since they were injured on the way to the safety meeting and not between the meeting and their work site).

26. *See Johnson v. Pac. Emp'rs Indem. Co.*, 439 S.W.2d 824, 828 (Tex.1969) ("As used in the dual-purpose rule in the phrase 'in furtherance of personal or private affairs of the employee,' we think the word 'furtherance' connotes the conferring of a benefit on the employee by helping to forward or advance his personal or private affairs. . . . ").

that Leordeanu was injured in the course and scope of her employment, reasoning that subsection (B) applied and (B)(ii) was not met. Leordeanu testified that after she left her business dinner, she intended to stop by her storage unit to unload business supplies from her car, then go to her apartment. The storage unit, she stated, was adjacent her apartment complex, and the route from the restaurant to the storage unit was identical to the route home, except that her apartment was a stone's throw farther. This schematic depicts her travel—

—where R represents the restaurant, A–1 the accident site, and S.U. the storage unit. The court of appeals reasoned:

> Leordeanu concedes that she was going home for the evening from the restaurant. There is no evidence that Leordeanu would not have made this travel if she did not intend to drop off items at the storage unit. On the contrary, Leordeanu concedes that she was going home whether or not she dropped items off at the storage unit. Therefore, on this record, the answer to [the question whether the travel would not have been made had there been no affairs or business of the employer to be furthered by the travel,] is "no," and it precludes a finding that Leordeanu was in the course and scope of her employment at the time of her injury.[27]

The court of appeals noted that in *St. Paul Fire & Marine Insurance Co. v. Confer*,[28] a sister court had reached a different conclusion in a similar situation. There, Dr. Confer left work intending to stop by a computer store for supplies on the way home, but he was killed in a car wreck before he reached the store. The opinion in the case is somewhat confused, stating initially that "in order to travel to [the store], it would have been necessary for Dr. Confer to deviate from his normal route home",[29] and later that the store "happen[ed] to be along the same route as his route home" so that he was not "forc[ed] . . . to travel away from his regular route [home]".[30] From the opinion's turn by turn description of his normal route, it appears that while the store was on *a* route home, that route was not his usual one or the most direct. Going to the store required a slight deviation from his normal route, and the accident occurred before he reached that point. Schematically, Confer's intended travel was as follows—

**27.** 278 S.W.3d 881, 890 (Tex.App.-Austin 2009) (footnotes omitted).

**28.** 956 S.W.2d 825 (Tex.App.-San Antonio 1997, pet. denied).

**29.** *Id.* at 827, 830 ("[A]n injury occurring between work and the business errand would be compensable because the employee has not completed work, while an injury occurring between the business errand and home would not be compensable because the employee's work would be finished.").

**30.** *Id.*

—where A–2 is the accident site. The court divided his trip into two segments, office-to-store and store-to-home, and concluded that the first, on which he was injured, was in the course and scope of employment because he was on a business errand.[31] The court also reasoned that if Confer had been injured after diverging from his normal route but before reaching the store, at site A–3 in the following schematic—

—he would clearly have been in the course and scope of employment, since that part of the trip would have been made solely for business reasons. "Why should the result be any different" at A–2 or A–3, the court asked.[32]

Two reasons, answered the court of appeals in the present case:

> first, the statute expressly declines to adopt the policy of allowing coverage whenever there is any business-related component to travel, and it mandates a different result for dual purpose travel based on specific statutory criteria; second, the statutory scheme has a rational basis in that a policymaker could well come to the conclusion that dual purpose travel should not be compensable unless it is predominately for a business-related purpose rather than predominately

for a personal purpose with an incidental business-related component.[33]

In sum, because the Legislature said so. But that answer begs the question whether the Legislature really intended by section 401.011(12)(B) a result that is certainly peculiar, if not perverse. Confer's travel at site A–3 would not have been excluded from the course and scope of his employment by the statute because (B)(i) and (ii) would both be satisfied: (i) he would have been there even if he had not been going home, because of his business errand, and (ii), he would not have been there but for the errand. Yet to get to A–3, he had to pass A–2, where he would have been, even without a business purpose, because he was going home no matter what, and therefore condition (ii) would not have been met.

**31.** *Id.*

**32.** *Id.*

**33.** 278 S.W.3d at 889.

Though the court of appeals' answer to *Confer*'s rhetorical question is unsatisfactory, its criticism of *Confer*'s analysis has weight. Dividing Confer's intended work-to-store-to-home trip into a work-to-store business segment followed by a store-to-home personal segment does not leave him with a single, business purpose at point A–2. However you slice it, when the accident occurred, Confer had two concurrent purposes: to run a business errand and to go home. If he had had no errand to run, he would still have made the same trip to the accident site on his way home, just as he usually did. Thus, subsection (B)(ii) cannot be satisfied by dissection.

And if it could, the court of appeals continued, there would be no need for the "dual purpose" rule at all.

[S]ection 401.011(12)(B) would not exist. The statute would simply provide that if travel had any business purpose at all, it is in the course and scope of employment. There would not be a dual purpose rule because there would be no special treatment of dual purpose travel. Dual purpose travel would, by definition, have a business purpose component and, therefore, would always be travel in the course and scope of employment.[34]

This overstates the case. The "dual purpose" rule would still have application in the situations for which it was devised, cases like *Marks, Davis,* and *Jecker,* where the employee was not headed home but to another destination, both on business and for pleasure. But the overstatement highlights what we think is the real problem: the application of the "dual purpose" rule to "coming and going" travel.

Under the "dual purpose" rule, Leordeanu's travel from her last appointment in Bastrop to the restaurant would also have been outside the course and scope of employment if, had the business dinner cancelled, she would have continued on to the storage unit and home. Indeed, had she arranged her business calls so that all were along the route home—

Call-1 → A-4 ···▶ Call-2 ···▶ Call-3 ···▶ R ···▶ S.U. ·▶ Home

■ —even an accident at site A–4 would be excluded from the course and scope of employment if she would have continued home had her appointments at Call–2, Call–3, and R cancelled. This would not be a reasonable application of section 401.011(12).[35]

■ Rather, we hold that only subsection (A) applies to travel to and from the place of employment,[36] and that subsection (B) applies to other dual-purpose travel. This is consistent with the historical development of the "coming and going" and "dual purpose" rules, their application in

---

**34.** *Id.*

**35.** We construe statutes to give effect to every provision and ensure that no provision is rendered meaningless or superfluous. *Columbia Med. Ctr. of Las Colinas, Inc. v. Hogue,* 271 S.W.3d 238, 256 (Tex.2008); *City of Marshall v. City of Uncertain,* 206 S.W.3d 97, 105 (Tex. 2006). To apply the "dual purpose" rule to "coming and going" travel, as the dissent argues, would contravene this principle by substantially undermining the "dual purpose" rule and the import of subsection (B)(ii).

**36.** In a broad sense, of course, all travel is homeward. *See* HERMAN MELVILLE, WHITE-JACKET 374 (A.L. Burt Co. 1892) (1850) ("Whoever afflict us, whatever surround, Life is a voyage that's homeward-bound!"). It is said that Masons identify one another among strangers by asking, "Brother, are you headed home?", to which the fraternal response is, "Brother, aren't we always headed home?". We do not by today's decision expand the "coming and going" rule beyond its traditional boundaries.

our cases, and the reasonable results they were designed to achieve.

 It is undisputed that Leordeanu was driving a car provided by her employer at the time of her accident and therefore excepted from the "coming and going" rule by subsection (A)(i). APIC argues that there is no evidence of the first element of the general definition in section 401.011(12)—that Leordeanu's travel at the time of her injury "ha[d] to do with and originate[d] in the work, business, trade, or profession of [her] employer"— because she was simply on her way home from work. But leaving aside the fact that she officed at home and intended to do some paperwork there before retiring for the night,[37] Leordeanu was also on her way from an employer-sponsored dinner to an employer-provided storage facility to empty her company car of business supplies. APIC cites no authority suggesting that such activity was not work-related, and we hold it was. As for the second element of the definition—that at the time of her injury, Leordeanu was "engaged in or about the furtherance of the affairs or business of [her] employer"—APIC concedes that "there was evidence of one or more work purposes to the trip" and that "[a]part from the ["dual purpose" rule], she would satisfy the 'furtherance' requirement."[38] Thus, there was evidence to support the jury's verdict that Leordeanu was injured in the course and scope of employment. APIC's challenge to the legal sufficiency of the evidence to support the verdict fails.

Accordingly, we reverse the judgment of the court of appeals and affirm the judgment of the trial court.

Justice JOHNSON filed a dissenting opinion.

Justice JOHNSON, dissenting.

Workers' compensation statutes are construed liberally in favor of workers. *In re Poly–America, L.P.,* 262 S.W.3d 337, 350 (Tex.2008). But construing statutes liberally does not mean effectively adding language to them to alter their meaning, which is what the Court does today. I dissent.

For an employee's injury to be compensable under the Texas Workers' Compensation Act, the injury must arise out of and be in the course and scope of the employee's employment. Tex. Lab. Code § 401.011(10). The Act specifically excludes some injuries during travel from being in the course and scope of employment:

The term ["course and scope of employment"] does not include:

(A) transportation to and from the place of employment unless:

> (i) the transportation is furnished as a part of the contract of employment or is paid for by the employer;

> (ii) the means of the transportation are under the control of the employer; or

> (iii) the employee is directed in the employee's employment to proceed from one place to another place; or

(B) travel by the employee in the furtherance of the affairs or business of the employer if the travel is also in

---

**37.** Leordeanu argues that she was injured in the course and scope of employment not only because she was on her way to the storage unit but also because she intended to work at her home-office before retiring. We do not address this latter contention.

**38.** Brief of Respondent at 8.

furtherance of personal or private affairs of the employee unless:

> (i) the travel to the place of occurrence of the injury would have been made even had there been no personal or private affairs of the employee to be furthered by the travel; and

> (ii) the travel would not have been made had there been no affairs or business of the employer to be furthered by the travel.

*Id.* § 401.011(12). Simplified, the definition specifies that the term "course and scope of employment" does not include "(A) transportation to and from the place of employment [with exceptions]; *or* (B) travel by the employee in the furtherance of the affairs or business of the employer if the travel is also in furtherance of personal or private affairs of the employee unless [both (B)(i) and (B)(ii) are satisfied]." (Emphasis added) The Court concludes that subsection (A) applies to travel to and from the place of employment and subsection (B) applies to other dual purpose travel. 330 S.W.3d 239. Under the Court's construction of the statute, "course and scope of employment" does not include "(A) transportation to and from the place of employment [with exceptions]; *or, in dual-purpose travel activities other than those specified in (A),* (B) travel by the employee in the furtherance of the affairs or business of the employer if the travel is also in furtherance of personal or private affairs of the employee unless [both (B)(i) and (B)(ii) are satisfied]."

The Court reaches its conclusion by improperly reading words into the statute that the Legislature did not include. *See City of Rockwall v. Hughes,* 246 S.W.3d 621, 631 (Tex.2008) ("[C]hanging the meaning of [a] statute by adding words to it, we believe, is a legislative function, not a judicial function."). It does so by noting that the Act's "listing [401.011(12)(A) and (B)]

as two disjunctive exclusions, can be read to suggest that travel is excluded from the course and scope of employment if either applies." 330 S.W.3d at 244. In my view, the statute not only "suggests" that travel is excluded from the course and scope of employment if either (A) or (B) applies, it plainly says so.

The court of appeals concluded that the statute declines to adopt the policy of allowing coverage when there is any business-related component to travel and mandates a different result for dual purpose travel. 278 S.W.3d at 881, 889. The court explained that a policymaker could come to the conclusion that dual purpose travel is compensable only if it is predominately for a business-related purpose. *Id.* The Court appears to downplay the court of appeals' reasoning by summarizing the appeals court's interpretation of the straightforward statutory language as being "[i]n sum, because the Legislature said so." 330 S.W.3d 239. But when courts interpret statutory language, they should take that language as it is written. *See Seay v. Hall,* 677 S.W.2d 19, 25 (Tex.1984) ("[I]t would be a usurpation of our powers to add language to a law where the legislature has refrained."); *Simmons v. Arnim,* 110 Tex. 309, 220 S.W. 66, 70 (Tex.1920) ("[Courts] are not the law-making body. They are not responsible for omissions in legislation."). Courts generally presume the Legislature said what it meant, and that the Legislature's omission of words was intentional. *See Entergy Gulf States, Inc. v. Summers,* 282 S.W.3d 433, 437 (Tex.2009) ("Where [statutory] text is clear, text is determinative of [Legislative] intent."); *Cameron v. Terrell & Garrett, Inc.,* 618 S.W.2d 535, 540 (Tex.1981); *Mauzy v. Legislative Redistricting Bd.,* 471 S.W.2d 570, 572 (Tex.1971); *see Tex. & N.O.R. Co. v. Tex. R.R. Comm'n,* 145 Tex. 541, 200 S.W.2d 626, 629 (Tex.1947). Courts should only read words into a statute when those words are necessary to

effect clear legislative intent or are implicit in the statute, or when the statute yields a nonsensical or absurd result absent the words. *See Laidlaw Waste Sys. (Dallas), Inc. v. City of Wilmer,* 904 S.W.2d 656, 659 (Tex.1995) ("[C]ourts should not insert words in a statute except to give effect to clear legislative intent."); *Lee v. City of Houston,* 807 S.W.2d 290, 294–95 (Tex. 1991) ("A court may not judicially amend a statute and add words that are not implicitly contained in the language of the statute."); *Jones v. Liberty Mut. Ins. Co.,* 745 S.W.2d 901, 902 (Tex.1988) (same).

The words the Court adds by "construction" are not implicit in the statute. Further, the court of appeals' opinion properly interprets the statute as the Legislature wrote it, effects the Legislature's intent as embodied in the language used, and demonstrates that construing the statute as it is written does not yield a nonsensical or absurd result.

I agree with the court of appeals that the dual purpose rule applies to Leordeanu's claim and her injury is not in the course and scope of her employment. For the reasons set out by the court of appeals, I would affirm its judgment.