# IN THE SUPREME COURT OF TEXAS

════════════
No. 14-0272
════════════

SEABRIGHT INSURANCE COMPANY, PETITIONER,

v.

MAXIMINA LOPEZ, BENEFICIARY OF CANDELARIO LOPEZ, DECEASED,
RESPONDENT

═══════════════════════════════════════════════════════
ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE FOURTH DISTRICT OF TEXAS
═══════════════════════════════════════════════════════

JUSTICE JOHNSON, dissenting.

In my view, Lopez's death was not in the course and scope of his employment. Because the

Court holds otherwise, I respectfully dissent.

An injured employee is entitled to compensation under the Texas Workers' Compensation

Act if "the injury arises out of and in the course and scope of employment." TEX. LAB. CODE

§ 406.031(a)(2). As relevant to this case,

> "[c]ourse and scope of employment" means an activity of any kind or character that
> has to do with and originates in the work, business, trade, or profession of the
> employer and that is performed by an employee while engaged in or about the
> furtherance of the affairs or business of the employer. The term includes an activity
> conducted on the premises of the employer or at other locations. The term does not
> include:
>
> > (A) transportation to and from the place of employment unless:
> >
> > > (i) the transportation is furnished as a part of the contract of
> > > employment or is paid for by the employer;

(ii) the means of the transportation are under the control of the employer; or

(iii) the employee is directed in the employee's employment to proceed from one place to another place;

*Id.* § 401.011(12).

The definition requires two elements to be met for an injury to have occurred in the course and scope of employment. *See Leordeanu v. Am. Prot. Ins. Co.*, 330 S.W.3d 239, 241 (Tex. 2010). The first is origination, which requires that the activity "has to do with and originates in the work, business, trade, or profession of the employer." TEX. LAB. CODE § 401.011(12). The second is furtherance, which requires that the activity be "performed by an employee while engaged in or about the furtherance of the affairs or business of the employer." *Id.* The part of the definition that specifically excludes injuries occurring during transportation to and from the place of employment, commonly referred to as the "coming and going rule," is relevant to the disposition of this case. *See id.* § 401.011(12)(A)(i)-(iii).

An injury while traveling to or from the place of employment is excluded from coverage unless one of three exceptions to the exclusion are met. *Id.* But proving an exception to the coming and going rule does not mean that the travel was an activity within the course and scope of employment, so as to render the injury compensable. *See Zurich Am. Ins. Co. v. McVey*, 339 S.W.3d 724, 729 (Tex. App.—Austin 2011, pet. denied). Rather, proving an exception merely prevents the employee's injury during the travel from being automatically excluded from coverage. *See Tex. Gen. Indem. Co. v. Bottom*, 365 S.W.2d 350, 353 (Tex. 1963); *McVey*, 339 S.W.3d at 729. And injuries to employees during travel to and from work generally do not originate in the employer's business

2

because "[t]he risks to which employees are exposed while traveling to and from work are shared by society as a whole and do not arise as a result of the work of employers." *Evans v. Ill. Emp'rs Ins. of Wausau*, 790 S.W.2d 302, 305 (Tex. 1990); *see Smith v. Tex. Emp'rs' Ins. Ass'n*, 105 S.W.2d 192, 193 (Tex. 1937).

At the time of the accident, Lopez was traveling to work on State Highway 7 in a company truck he had been granted permission to use. Thus, an exception to the coming and going exclusion applies because the transportation was paid for by his employer, Interstate Treating, Inc. TEX. LAB. CODE § 401.011(12)(A)(i). But unless the evidence shows that his injury met the furtherance and origination requirements, it was not covered.

The furtherance aspect is satisfied because Lopez was on his way to the job site. *See Leordeanu*, 330 S.W.3d at 242. Therefore, whether the accident originated in Interstate Treating's business is determinative of the course and scope issue. In making that determination, the focus is on "whether the relationship between the travel and the employment is so close that it can fairly be said that the injury had to do with and originated in the work, business, trade or profession of the employer." *Id.* The Court has noted several factors that reflect on whether an employee's travel originates in the employer's business or work, including: (1) whether the employment contract expressly or impliedly required the travel involved; (2) whether the employer furnished the transportation; (3) whether the employee was traveling on a special mission for the employer; and (4) whether the travel was at the direction of the employer, such as requiring the employee to bring tools or other employees to work or another location. *See, e.g.*, *Am. Gen. Ins. Co. v. Coleman*, 303 S.W.2d 370, 374 (Tex. 1957) (identifying that undertaking a special mission or performing a service

3

at the direction of the employer is within the course and scope of employment even if also going to or leaving from the place of employment); *Tex. Emp'rs' Ins. Ass'n v. Inge*, 208 S.W.2d 867, 868-69 (Tex. 1948) ("The substance of the arrangement was that the members of the drilling crew were being transported to the well location free of cost to them; and this was an important part of their contract of employment."). No single factor is necessarily determinative, but we have said that "[r]educed to its simplest terms, the problem is whether [the injured employee] was already working, or was simply on his way to work, at the time of the accident." *Meyer v. W. Fire Ins. Co.*, 425 S.W.2d 628, 628 (Tex. 1968).

The Court relies on *Meyer* for the proposition that "origination" is satisfied "if the employee's travel was 'pursuant to express or implied conditions of his employment contract.'" ___ S.W.3d at ___ (quoting *Meyer*, 425 S.W.2d at 629-30). Certainly, the Court's statement is true, but it does not apply to this case. In *Meyer*, the injured employee was a service supervisor for a home builder. Meyer, the injured employee, frequently took calls at his home or wherever he happened to be, and responded to them directly from there. As we explained the facts,

> [Meyer's] duties did not require him to report to the office daily or at any particular time. Although he "liked to get by" the office once a day to pick up messages, he did not always do so. He did not have a desk at his employer's office, and he usually received complaints and did his required paper work at his home.
>
> On the day of the automobile accident and resulting injury, Meyer began the working day at home by taking two business telephone calls from Fairview Addition homeowners and completing some paper work in preparation for a meeting at the office that afternoon. He testified in his deposition that he then left his home to make service calls in a subdivision in Northeast Austin. Although he was not required to report to his employer's office that morning and had no duties to perform there, he decided to drive by the office on his way to the subdivision to determine whether there were any messages relating to service calls in Northeast Austin, so that he could

4

perform all his work in that area at one time. The automobile collision occurred before he reached his employer's office, and on the usual and customary route between Meyer's home and the office.

*Meyer*, 425 S.W.2d at 629. The trial court granted summary judgment to the workers' compensation insurer on the basis that Meyer was not in the course of his employment when he was injured in the accident, and the court of appeals affirmed. This Court reversed and remanded on the basis that

> Meyer's duties as a service supervisor required him to travel from place to place in order to discharge the duties of his employment. Thus there is evidence that he was impliedly directed to travel to make his service calls on the morning of the accident, and injuries thus sustained while furthering his employer's business by making such service calls would be compensable . . . .

> The [evidence] supports the contention that Meyer was not on his way to [b]egin work, or to be assigned work; but that he had already begun work and was traveling on the streets to make service calls pursuant to his usual duties, and merely deviated to his employer's office to see if there were other duties to be performed in the neighborhood of his planned service calls. Assuming that the evidence upon trial on the merits were to establish that Meyer was not reporting to work or to be assigned work at his employer's office, his deviation to his employer's office while in the course of his usual service calls would not place him within the category of workers driving from home to work, . . .

*Id.* at 630.

The differences between Meyer's situation and Lopez's situation are readily apparent. Meyer did not have a fixed place to work, such as an office or particular job site. *Id.* at 629. Lopez did. Meyer was not traveling to *get to* his work; he was traveling as *part of* his work. *Id.* at 630. Lopez was not traveling as *part of* his work; he was traveling to *get to* his work. Meyer had already begun work when he was injured. *Id.* Lopez had yet to begin work when he was injured. There is no evidence that express or implied conditions of Lopez's employment contract required more than that he show up at the job site and work.

5

Traveling public roadways entails risks of accidents and injuries. Employees who travel as part of their duties are at risk of being injured during the travel, whereas they would not have that risk if they worked at a fixed place of employment. *See Smith*, 105 S.W.2d at 193. Even though the risk of traffic injuries is qualitatively the same as to both employees traveling to or from work and those employees whose job duties require travel, the latter employee's risk of traffic injury is in addition to the risk of merely going to and from work that all employees share. Plus, travel by employees as part of their job duties clearly would be in the course and scope of employment . But Lopez had not yet begun work at the time of the accident. This risk of injury to which he was exposed on the morning of the accident was the same as any other person traveling on public roads to reach a job site. The duties of his job did not create the chances of his being injured. And the fact that he was going to work from a temporary residence in Marlin does not change that. Whether he was going to work from his home in Rio Grande City to a job site forty miles away or traveling forty miles to Interstate Treating's job site from his temporary residence in Marlin, the risk of injury to which Lopez was exposed under the facts of this case is the same: the risk of injury in a traffic accident on a public roadway while on the way to begin work. That is not a risk covered by SeaBright Insurance's policy of workers' compensation insurance.

The Court's reliance on *Texas Employers' Insurance Association v. Inge*, 208 S.W.2d 867 (Tex. 1948), is also misplaced. There the employer paid $0.07 per mile for an employee to transport himself and other employees to a remote drill site, although the employees determined which of them would drive. *Inge*, 208 S.W.2d at 868. The drill site was remote, housing was not available nearby, and the company offered free transportation to its employees as an employment incentive. *See id.*

at 868-69. Further, the existing wartime conditions necessitated employer-provided transportation as the only practical manner to secure employees in the remote location. *Id.* at 869. In Lopez's case, however, there were motels near the Ridge job site, and Lopez's supervisor even asked Lopez why he was staying so far from the site.

Moreover, it was not Interstate Treating's policy to provide its employees with off-site transportation as an employment incentive for field projects. As noted previously, the company merely acquiesced to Lopez's request to use a company truck to travel to and from work. Interstate Treating did not initiate Lopez's use of the truck by offering it to him. No evidence suggests that Interstate Treating explicitly or implicitly required Lopez to transport other workers to the job site, nor is there evidence that Interstate Treating promised other employees free transportation by means of the truck Lopez was given permission to use. Nothing in the record suggests that Interstate Treating had to offer transportation incentives to its field employees in order to secure or retain their employment.

The Court says that Interstate Treating's business model calls for extended-duration field work away from employees' residences, so Lopez's travel was effectively dictated by Interstate Treating. __ S.W.3d __. However, where the employee is traveling to a fixed-location job site on public roads, regardless of whether the employee leaves from a temporary or permanent residence, the risk is the same—the ordinary risks associated with highways and roads. There is no meaningful distinction between the two. This situation is not analogous to those instances where the duties of the job itself require travel, such as travel by delivery and service workers.

7

Additionally, while the Court credits Interstate Treating's payment of a per diem as evidence of a close relationship between travel and the employment, merely increasing a worker's pay through a per diem does not expand workers' compensation coverage to include ordinary risks of traveling to and from a job site. A per diem is simply a form of compensation, and in Lopez's case it was not related to commuting. As the record reflects, the per diem was for temporary housing and meal expenses. The type of lodging he rented, the location of the lodging, and the types of food he ate were not matters dictated by Interstate Treating. And to the extent the lodging was distant from the job site, exposing Lopez to increased traffic during his commute to and from work, the choice of how far he had to drive to get to work was his.

Workers' compensation insurance is not life insurance. Nor is it all-risk accident insurance. It is insurance covering work-related injuries. While tragic, Lopez's death under these circumstances did not originate in his employment duties for Interstate Treating. Rather, it originated in the ordinary, usual risks all workers assume when they travel to and from fixed work locations.

I would hold that the record conclusively proves that the requisite nexus between the travel and Lopez's employment duties did not exist, and Lopez was not injured in the course and scope of his employment. I would reverse the judgment of the court of appeals and render judgment for SeaBright Insurance Company.

 

_____
Phil Johnson
Justice

**OPINION DELIVERED:** June 12, 2015

8