# NO. 12-24-00013-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *JASON HART,*<br>*APPELLANT* | *§* | *APPEAL FROM THE 241ST* |
| *V.* | *§* | *JUDICIAL DISTRICT COURT* |
| *NEW HAMPSHIRE INSURANCE*<br>*COMPANY,*<br>*APPELLEE* | *§* | *SMITH COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Appellant Jason Hart appeals from the trial court's denial of his summary judgment motion and grant of Appellee New Hampshire Insurance Company's (NHIC) summary judgment motion in this workers' compensation case. In Hart's sole issue, he argues that he was in the course and scope of his employment as a matter of law when he was injured while driving his employer's vehicle home from work. We reverse and remand.

## BACKGROUND

Hart lived in Tyler and worked as a driver and field technician for Weatherford International, LLC (Weatherford). He performed work at Weatherford's Longview facility—referred to in the record variously as "the shop" or "the yard"—and at different remote jobsites. Weatherford provided Hart a pickup truck for work-related travel, including travel between his home and the yard. On April 10, 2017, while Hart was driving home from the yard, an oncoming driver veered into his lane, colliding with and severely injuring him.

Hart filed a claim under Chapter 410 of the Texas Workers' Compensation Act. Weatherford's insurance carrier, NHIC, contested the coverage. After a hearing on November 2,

an administrative law judge (ALJ) determined that Hart was not in the course and scope of his employment when he was injured and, therefore, did not sustain a compensable injury or have disability under the Act. A Texas Department of Insurance—Division of Workers' Compensation (DWC) appeals panel affirmed the ALJ's judgment and rendered a decision against Hart.

Hart subsequently filed suit in the trial court, maintaining that he was in the course and scope of his employment and is entitled to workers' compensation benefits and disability at least through the date of the administrative hearing. He further requested attorney's fees as allowed under the Texas Labor Code. NHIC filed a combined traditional and no-evidence summary judgment motion arguing that there is no genuine issue of material fact and no evidence that Hart was in the course and scope of his employment when he suffered his injuries. Hart filed a partial summary judgment motion arguing that he was in the course and scope of his employment as a matter of law. The court granted NHIC's motion, denied Hart's, and rendered judgment in NHIC's favor. This appeal followed.

## COURSE AND SCOPE

In Hart's sole issue, he contends that he was in the course and scope of his employment as a matter of law because he was driving an employer assigned, paid, and authorized vehicle when he was injured.

### Standard of Review

The Texas Workers' Compensation Act[1] provides that an aggrieved party, after exhausting its administrative remedies, may seek judicial review of the appeals panel's final decision. TEX. LAB. CODE ANN. § 410.251 (West 2006). Review of a compensability decision is limited to issues decided by the appeals panel. *Id.* § 410.302 (West 2006). The party appealing the compensability decision has the burden of proof by a preponderance of the evidence. *Id.* § 410.303 (West 2006). In a jury trial, the jury is informed of the panel's decision but is not required to accord it a particular weight. *Id.* § 410.304(a) (West 2006); *Tex. Workers' Comp. Comm'n v. Garcia*, 893 S.W.2d 504, 515 (Tex. 1995). Similarly, in a bench trial, the trial court considers the panel's decision but is not required to accord it a particular weight. TEX. LAB.

---

[1] *See* TEX. LAB. CODE ANN. § 401.001, et seq. (West 2006).

CODE ANN. § 410.304(b) (West 2006); ***State Office of Risk Mgmt. v. Joiner***, 363 S.W.3d 242, 247 (Tex. App.—Texarkana 2012, pet. denied).

We review de novo a trial court's summary judgment ruling. *See **Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding***, 289 S.W.3d 844, 848 (Tex. 2009). A party moving for traditional summary judgment has the burden to prove no genuine issue of material fact exists and it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); ***SeaBright Ins. Co. v. Lopez***, 465 S.W.3d 637, 641 (Tex. 2015). A no evidence summary judgment motion is properly granted if the nonmovant fails to bring forth more than a scintilla of evidence to raise a genuine fact issue as to an essential element of his claim for which he would have the burden of proof at trial. ***DeGrate v. Exec. Imprints, Inc.***, 261 S.W.3d 403, 407 (Tex. App.—Tyler 2008, no pet.). We review the record in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts against the motion. *See **Sudan v. Sudan***, 199 S.W.3d 291, 292 (Tex. 2006). When both sides move for summary judgment and the court grants one motion and denies the other, we review both sides' summary judgment evidence, determine all questions presented, and render the judgment that the trial court should have rendered. ***FM Props. Operating Co. v. City of Austin***, 22 S.W.3d 868, 872 (Tex. 2000). Here, because both parties moved for summary judgment, we examine all the summary judgment evidence and determine whether it establishes as a matter of law that Hart was in the course and scope of his employment, or whether it at least raises a genuine issue of material fact regarding course and scope. *See **id.***

## Applicable Law

"The Texas Legislature enacted the [Texas Workers' Compensation] Act in 1913 in response to the needs of workers, who, despite escalating industrial accidents, were increasingly being denied recovery." ***Lopez***, 465 S.W.3d at 642 (quoting ***Kroger Co. v. Keng***, 23 S.W.3d 347, 349 (Tex. 2000)). "In order to balance the competing interests of providing 'compensation for injured employees while protecting employers from the costs of litigation, the Legislature provided a mechanism by which workers could recover from subscribing employers without regard to the workers' own negligence while limiting the employers' exposure to uncertain, possibly high damage awards permitted under the common law." ***Id.*** (quoting ***In re Poly-Am., L.P.***, 262 S.W.3d 337, 350 (Tex. 2008)). "The Act ultimately struck a bargain that allows employees to receive "a lower, but more certain, recovery than would have been possible under

the common law.'" *Id.* (quoting *Kroger Co.*, 23 S.W.3d at 350). "We liberally construe the Act in favor of injured workers to effectuate these purposes." *Id.* (citing *In re Poly-Am., L.P.*, 262 S.W.3d at 350).

An injury is compensable under the Act if it "arises out of and in the course and scope of employment for which compensation is payable." TEX. LAB. CODE ANN. § 401.011(10) (West 2006). "Course and scope of employment" is defined as

> an activity of any kind or character that has to do with and originates in the work, business, trade, or profession of the employer and that is performed by an employee while engaged in or about the furtherance of the affairs or business of the employer. The term includes an activity conducted on the premises of the employer or at other locations. The term does not include:
>
> (A) transportation to and from the place of employment unless:
>
> (i) the transportation is furnished as a part of the contract of employment or is paid for by the employer;
>
> (ii) the means of the transportation are under the control of the employer; or
>
> (iii) the employee is directed in the employee's employment to proceed from one place to another place; or
>
> (B) travel by the employee in the furtherance of the affairs or business of the employer if the travel is also in furtherance of personal or private affairs of the employee unless:
>
> (i) the travel to the place of occurrence of the injury would have been made even had there been no personal or private affairs of the employee to be furthered by the travel; and
>
> (ii) the travel would not have been made had there been no affairs or business of the employer to be furthered by the travel.

*Id.* § 401.011(12) (West 2006). To meet the basic definition of course and scope, an activity must "(1) relate to and originate in the employer's business and (2) further the employer's affairs." *Orozco v. Cty. of El Paso*, 602 S.W.3d 389, 393 (Tex. 2020).

Travel to and from work satisfies the furtherance element because such travel makes employment possible and thus furthers the employer's business. *Leordeanu v. Am. Protection Ins. Co.*, 330 S.W.3d 239, 242 (Tex. 2010). However, such travel ordinarily does not satisfy the origination element because "[t]he risks to which employees are exposed while traveling to and from work are shared by society as a whole and do not arise as a result of the work of employers." *Id.* (quoting *Evans v. Ill. Emp'rs Ins. Of Wausau*, 790 S.W.2d 302, 305 (Tex. 1990)). "[A] distinction can be made if 'the relationship between the travel and the employment is so close that it can fairly be said that the injury had to do with and originated in the work,

4

business, trade or profession of the employer.'" *Lopez*, 465 S.W.3d at 642 (quoting *Shelton v. Standard Ins. Co.*, 389 S.W.2d 290, 292 (Tex. 1965)). "This inquiry is satisfied if the employee's travel was "pursuant to express or implied conditions of his employment contract.'" *Id.* (quoting *Meyer v. W. Fire Ins. Co.*, 425 S.W.2d 628, 629 (Tex. 1968)). Exceptions may also exist for "travel that is an integral or required part of the employee's work." *Orozco*, 602 S.W.3d at 393. We generally employ "a fact-intensive analysis to determine whether an employee's travel originated in the employer's business, focusing on the nature of the employee's job, the circumstances of the travel, and any other relevant facts." *Lopez*, 465 S.W.3d at 642.

Even if the origination and furtherance elements are met, transportation to and from work is excluded from course and scope unless it meets one of the three exceptions to Subsection (A), often called the "coming and going rule." *Leordeanu*, 330 S.W.3d at 242, 244. Similarly, Subsection (B), known as the "dual-purpose rule," excludes travel that furthers the affairs of both the business and the employee, unless the travel meets both that subsection's exceptions. *Id.* at 244. The dual-purpose rule does not apply to travel to and from work. *Id.* at 248.

## Authorized Use of Company Vehicle

Hart argues that an employee is in the course and scope of his employment whenever he drives a company vehicle home from work with his employer's authorization. To support his argument, Hart relies in part on case law stating that "if it is proved that the automobile in question was owned by the defendant, and further proved that the driver was in the employment of defendant, a presumption then arises that such driver was within the scope of his employment when the accident occurred." *See Broaddus v. Long*, 135 Tex. 353, 356, 138 S.W.2d 1057, 1058 (1940). However, *Broaddus* is a negligence case, not a workers' compensation case. *See id.* Hart cites no authority supporting such a presumption in the workers' compensation context, and we find none. To the contrary, such a presumption is omitted from relevant workers' compensation authorities and inconsistent with their requirement that, to be in the course and scope of employment, an employee's activity must originate in and further the employer's business. *See* TEX. LAB. CODE ANN. § 401.011(10); *see also, e.g.*, *Lopez*, 465 S.W.3d at 642; *Leordeanu*, 330 S.W.3d at 244.

Hart contends, nonetheless, that under the Texas Supreme Court workers' compensation case law, an employee is in the course and scope of his employment whenever he drives a

company vehicle home from work with his employer's authorization. The opinions he cites do not support such a sweeping conclusion.[2] "There is no bright-line rule for determining whether employee travel originated in the employer's business." *Zurich Am. Ins. Co. v. McVey*, 339 S.W.3d 724, 730 (Tex. App.—Austin 2011, pet. denied); *see Lopez*, 465 S.W.3d at 642 (origination analysis is fact-intensive, focusing on nature of job, circumstances of travel, and any other relevant facts). Accordingly, we disagree with Hart that these facts alone establish he was in the course and scope of his employment as a matter of law. Instead, the evidence must show that his travel originated in and furthered Weatherford's business and, further, because his travel constituted "transportation . . . from the place of employment," that his travel meets at least one of Subsection (A)'s three exceptions. *See* TEX. LAB. CODE ANN. § 401.011(10); *Lopez*, 465 S.W.3d at 642; *Leordeanu*, 330 S.W.3d at 244.

**Origination**

NHIC does not dispute that Hart's travel meets the furtherance element of course and scope or that it is excepted from the coming and going exclusion by Subsections (A)(i) and (A)(ii). Rather, it contends only that his travel fails to meet the origination element. After reviewing the summary judgment evidence with a focus on the nature of Weatherford's business and Hart's job, the circumstances of Hart's travel, and other relevant facts, we conclude that it raises a genuine issue of material fact regarding origination.

Most of the relevant facts are undisputed. Weatherford's business involved servicing oil and gas wells for various customers in the industry. Employees of Weatherford's Longview facility worked in the yard some days but more often traveled and serviced wells at various remote well sites in multiple states. Typically, a job required a two-member crew consisting of an operator and a field technician. One crewmember drove a company pickup truck to the remote site while the other drove the "unit." The "unit" was a ten-wheel semi-truck with air brakes that served as a mobile well service unit and required a driver with a Class A commercial driver's

---

[2] *See Orozco v. Cty. of El Paso*, 602 S.W.3d 389, 393 (Tex. 2020) (deputy in course and scope during authorized travel home in marked patrol car while not paid for time, but available for calls, required to notify dispatch before starting car and upon arriving home, patrolling roads was significant part of employer's work, and personal use of car was prohibited); *SeaBright Ins. Co. v. Lopez*, 465 S.W.3d 637, 642 (Tex. 2015) (installation foreman in course and scope during authorized travel in company vehicle with paid fuel and insurance from motel to temporary remote job site, driving self and two coworkers, travel time not paid, per diem provided for food and lodging, and business called for employing specialized, non-local crews in constantly changing, remote locations on temporary assignments); *Leordeanu v. Am. Protection Ins. Co.*, 330 S.W.3d 239, 242 (Tex. 2010) (pharmaceutical sales representative in course and scope during homeward travel between work-related event and work-related stop in company car).

license.  Weatherford had no formal system for "clocking in and out."  Instead, employees reported their hours on a weekly time sheet.

In late 2016, Weatherford hired Hart, a Class A commercial driver's license holder, as a driver and field technician.  About thirty percent of his workdays were spent at the shop preparing for one or more jobs in the field. Such preparations included cleaning, sending the unit to the shop for preventive maintenance, and stocking the unit for the job. On these days, he worked from 8:00 a.m. to 4:00 p.m.  The distance between Hart's home and the yard was 38 to 39 miles, and the drive took forty-five minutes to an hour.  Occasionally, he was asked to stop at a facility on his route to purchase parts for Weatherford.

Weatherford provided Hart a company truck for work-related travel, including his travel between home and the yard.  Weatherford paid for the truck's insurance, maintenance, and gasoline, and Hart paid nothing to use it.  "Weatherford" stickers marked the sides of the three-quarter-ton pickup truck, whose location was monitored by Weatherford through GPS tracking. Hart was not allowed to use the truck for personal reasons.

On travel days, Hart met the operator of his crew at the shop.  Because Hart was the only crewmember with a Class A commercial driver's license, he drove the unit to and from the remote site while the operator drove Hart's company truck.  At the jobsite, Hart performed all the groundwork and rig-up and assisted the operator, who operated the unit, monitored measurements, and communicated with customers.  When the crew was on a remote job assignment, the operator paid for Hart's food and lodging with a company card.

When Hart was not scheduled to work, he was "on call" twenty-four hours a day.  This meant that if Weatherford called him at any time for an emergency job, he was required to respond.  During the approximately five months Hart worked for Weatherford, he received multiple calls after hours.  Some were merely informational.  Twice, Hart was called to work at night after working a full day in the yard.  Occasionally, he was called to work on weekends.

On April 10, Hart worked at the yard preparing for two jobs in Louisiana the next morning.  He looked over the unit, checked its functioning, checked for oil leaks, filled the water tanks, and stocked necessary parts and fittings.  Additionally, a 2,000- to 2,500-pound spool of stainless steel capillary tubing belonging to the customer was loaded onto the unit, and, because the crew was to visit two of the customer's job sites, a second spool was loaded onto Hart's company truck.  The spool could have been loaded the next morning, but this would have cost

7

time and risked the crew's safety because of the lack of daylight. Hart testified that the spool's presence affected the truck's maneuverability and increased its slowing and stopping time.

Hart was expected to drive the loaded truck home and back to the yard to meet operator Nathan Mawer between 5:00 and 6:00 the next morning. No stops were anticipated. Hart testified he remembered nothing about the accident and did not see the crash report. However, to his understanding, the accident occurred on his normal route home, thirty to forty miles from the yard, on Farm to Market Road 3053. Based on the truck's GPS data, it was determined that Hart applied his brakes and was traveling well below the speed limit before the collision. When asked whether he was hit head-on, Hart agreed that he was. However, Texas Department of Public Safety investigator Robbie Dillard opined in the crash report that the other driver struck Hart's truck "in the front left with the front left of [her car]." A diagram in the report appears to depict contact between the other vehicle's left front corner and the left side of Hart's truck near its left front corner, at a point in Hart's lane just across the center stripe. According to Dillard, Hart's truck rolled right after the contact and came to rest on its top in a roadside ditch. Hart testified that, to his knowledge, the spool did not contribute to the accident.

Whether Hart was paid for his travel time between home and the yard is disputed by the parties. NHIC contends the evidence shows Hart was not paid for his travel time between home and the yard, while Hart argues it shows the reverse. We find evidence supporting both arguments.

Before discussing the evidence, we address Hart's argument that Weatherford's provision of transportation constitutes "wages" under the labor code, thus showing that he was paid for his travel time.[3] We find this argument unpersuasive. While both the undisputed fact that Weatherford provided Hart's transportation and the disputed question of whether he was paid an hourly wage for his travel time are relevant to the origination issue, the question of whether the provided transportation constitutes "wages" under the labor code is irrelevant.

We now turn to the evidence tending to prove or disprove that Hart was paid for his travel time. At the 2017 administrative hearing, Hart testified that he was not paid for his travel time between home and the yard, but he testified to the contrary at his 2019 deposition. When asked about the change in his testimony, he explained that although Weatherford's formal policy

---

[3] *See* TEX. LAB. CODE ANN. § 401.011(43) (West 2006).

did not state employees' travel time between home and the yard was paid, other employees told him he could report and be paid for such time. Therefore, he reported the time, and Weatherford paid him for it without complaint. After Hart recovered from the accident, in March 2018, Weatherford rehired him as an operator. By then, employees no longer reported their hours on weekly time sheets but clocked in and out on company cell phones. Hart asked Mawer, who now oversaw Weatherford's operations, sales support, and business development for Longview, San Antonio, West Texas, and part of the northeast, whether he could clock in and out on the phone when departing from and returning home. Mawer responded, "Yes, we've been doing that," and stated that the corporate office said they "had no complaints" about paying employees for such time because they were in Weatherford vehicles. However, according to Mawer's 2023 affidavit, Weatherford's policy was that employees were not paid for such time, and if an employee reported such time on his time sheet, he did so without authorization or approval. Thus, direct evidence clearly exists on both sides of the issue.

Despite Hart's claim that he was paid for his travel time, NHIC contends Hart's own evidence shows his April 10 workday ended at 5:00 and the crash occurred at 5:30, thereby establishing conclusively he was not paid for his travel time between home and the yard. To support this contention, NHIC cites certain testimony of Hart and documentary evidence that, according to NHIC, show Hart (1) reported on his time sheet that his April 10 workday ended at 5:00, (2) testified that he was paid until 5:00 that day, and (3) confirmed that the crash occurred at 5:30. Even assuming the evidence that the crash occurred at 5:30 is conclusive,[4] we disagree with the rest of NHIC's assessment for the reasons that follow.

First, NHIC bases its conclusion that Hart reported ending his April 10 workday at 5:00 on (1) Weatherford's "Time Card Summary Report" printout, which reflects a "clocked off" time of 5:00, and (2) Hart's testimony that he typically completed and submitted his own time sheets. However, NHIC ignores additional testimony by Hart that he (1) submitted his time sheets weekly, (2) would have filled in his April 10 hours the next day had the accident not occurred, and (3) spent at least twenty-seven days in the hospital after the accident. This evidence tends to show that, although Hart generally reported his own hours, the accident prevented him from reporting his hours for April 10. Additionally, we note that although Hart testified he was at the

---

[4] The crash report reflects a "crash time" of 5:30 p.m., and Hart, without stating a basis for his knowledge, agreed that the purported crash time sounded "about right."

yard from 8:00 until 4:00 or 4:30, and the Time Card Summary Report reflects a "clocked on" time of 7:00, NHIC does not dispute that he arrived at 8:00.

Further, NHIC considers the following testimony a statement by Hart that he reported ending his April 10 workday at 5:00:

NHIC:     Once you left the Longview yard on the afternoon of April 10th and got in your pickup truck, you were not getting paid by Weatherford any more for that day, correct?

HART:     Yes, sir, I was.

NHIC:     You were being paid until when?

HART:     Until I got home.

NHIC:     So they paid you for your time driving to and from work?

HART:     Yes, sir. When I wrote it down on my time sheets, I wrote 7:00 to 5:00. That would be the time I left my house to the time I got back to my house.

We disagree. Although the initial question is specific to April 10, the final question and response are general. In other words, Hart meant that, on a typical 8:00 to 4:00 day in the yard, he reported working from 7:00 to 5:00, not that he worked at the yard from 7:00 to 5:00 on April 10. This interpretation is supported by his pluralization of "time sheets" and reference to "the time I got back to my house," which, of course, did not happen April 10. Based on the foregoing analysis, we cannot agree that the evidence NHIC cites conclusively establishes Hart was not paid for his time while traveling home.

Based on our review of all the summary judgment evidence, we conclude that it fails to resolve the origination issue as a matter of law, but it raises a genuine issue of material fact regarding whether the relationship between Hart's travel and his employment "is so close that it can fairly be said that the injury had to do with and originated in the work, business, trade or profession" of Weatherford. *See Lopez*, 465 S.W.3d at 642; *see also Cook v. Tex. Mut. Ins. Co.*, 677 S.W.3d 52, 60-61 (Tex. App.—El Paso 2023, no pet.) (fact issue regarding origination existed where employee was injured en route from home to employer's yard, vehicle was employer owned and controlled, vehicle contained employer's tools used by employee, employee's job duties were performed at employer's yard and various worksites, employee was employer's sole mechanic and responsible for checking equipment before its use, employee was

10

expected to report to work whenever summoned, and employee's travel time from home was sometimes paid).

## Conclusion

Because the evidence fails to establish that Hart's travel was in the course and scope of his employment as a matter of law, we conclude the trial court correctly denied his summary judgment motion. But because the evidence establishes his travel was in furtherance of Weatherford's business, establishes at least one exception to the coming and going exclusion, and raises a genuine fact issue regarding origination, we conclude the trial court erred by granting NHIC's motion. Accordingly, we sustain Hart's sole issue.

### DISPOSITION

Having sustained Hart's sole issue, we *reverse* the trial court's judgment and *remand* the case to the trial court for further proceedings consistent with this opinion.

**BRIAN HOYLE**
Justice

Opinion delivered November 27, 2024.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

11



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**NOVEMBER 27, 2024**

**NO. 12-24-00013-CV**

**JASON HART,**
Appellant
V.
**NEW HAMPSHIRE INSURANCE COMPANY,**
Appellee

Appeal from the 241st District Court

of Smith County, Texas (Tr.Ct.No. 18-0057-C)

THIS CAUSE came to be heard on the appellate record and the briefs filed herein, and the same being considered, because it is the opinion of this court that there was error in the judgment of the court below, it is ORDERED, ADJUDGED and DECREED by this court that the judgment be **reversed** and the cause **remanded** to the trial court **for further proceedings** and that all costs of this appeal are hereby adjudged against the New Hampshire Insurance Company, in accordance with the opinion of this court; and that this decision be certified to the court below for observance.

Brian Hoyle, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*